Beard *vs.* Dean.

## BEARD *vs.* DEAN.

It is not obligatory upon the ordinary, or upon the superior court on appeal, to supersede the mother as natural guardian of a daughter over fourteen years of age, and appoint as guardian the person elected by the latter. And where the mother, though no longer a widow, desires the guardianship and offers bond and satisfactory security, and where she is not shown to be unfit morally, mentally, or otherwise, to bring up her own daughter and manage her estate, a judgment rejecting the nominee and appointing the mother will not be disturbed.

Guardian and ward. Before Judge POTTLE. Madison Superior Court. March Term, 1879.

Ross Beard, a female minor nearly sixteen years of age, applied to the court of ordinary to be allowed to select her guardian, naming Skinner. Ross' mother, her father being dead, *caveated* the application, and asked that she be appointed. It was so ordered and Ross appealed to the superior court. Upon the trial there the evidence presented, in brief, the following facts:

Ross' father died before she was born. Her mother raised her until she was about seven years of age, when she went to her uncle Dean's to sow some peas, and had there

remained since; her mother had married again, and her (Ross') association with her step-father's children by a former marriage was not pleasant; she was happy where she was, had lived with her uncle for seven or eight years pleasantly, was treated kindly and as one of his own children, and preferred so to remain to returning to the care of her mother; Skinner would not interfere with this condition of affairs, whilst if her mother was appointed she would be compelled to return to her step-father's; she owned a small tract of land of the value of about $300.00.

There was testimony to show that either Skinner or her mother would make a proper and competent guardian.

The issue thus made was submitted to the court without the intervention of a jury. The mother prevailed, and Ross excepted.

G. Nash; J. B. Estes; W. G. Johnson, for plaintiff in error.

J. M. Mathews; Samuel Lumpkin, for defendant.

Bleckley, Justice.

There is certainly nothing in the record to warrant this court in the slightest interference with the discretion exercised by the court below in appointing the mother rather than the person selected by the ward, if that court had, by law, any discretion in the matter. The guardianship in controversy was not of the property alone, but of the person also. Indeed, it was the latter element that gave point to the whole proceeding. There are three sections of the Code which we find it necessary to compare and interpret. Section 1803 says that the father, if alive, is the natural guardian; if dead, the mother is the natural guardian; a guardian's bond has to be filed, and accepted by the ordinary, before the natural guardian can receive property, and if this is not done, the ordinary may appoint another guardian to receive the property. Section 1806 empowers

the ordinary to appoint for a minor "having no guardian," a guardian of person and property, or of either, and adds that if the ward is above the age of fourteen years before a guardian is appointed, the ward shall have the privilege of selecting, and if the selection be judicious, the ordinary shall appoint the person selected. Section 1808 is in these words: "In the appointment of guardians, the widowed mother shall have the preference upon complying with the law. Upon her marriage again the letters are revoked, though her husband shall be responsible to the ward as guardian, if no other guardian be appointed. Among collaterals applying for the guardianship, the nearest of kin by blood, if otherwise unobjectionable, shall be preferred—males being preferred to females. The ordinary, however, in every case may exercise his discretion according to the circumstances, and, if necessary, grant the letters to a stranger in blood." To harmonize all the provisions of these three sections, they must be read attentively. Natural guardianship, pure and simple, is of the person only, and is incident to the relation of parent. The ordinary has nothing to do with constituting the mother natural guardian any more than with constituting the father such. The mother succeeds the father by operation of law, and without any action whatever by the ordinary—no appointment, no letters of guardianship are contemplated. But for the mother, or the father either, to have guardianship of the child's property, the ordinary must be consulted; bond must be given, and by the ordinary accepted. When this is done the parent is guardian of both person and property. But suppose it is not done, what is the power of the ordinary? Merely to appoint some one else guardian to receive the property. Nothing is said of any authority to displace the parent as guardian of the person. For a minor having no guardian, the ordinary may appoint a guardian of person and property, or of either; but if the minor has a natural guardian, it certainly cannot be said in a broad sense that he or she has no guardian. In such case the

range of appointment is limited to guardianship of the property, for it is only as to property that there is no guardian. The right of a ward of the prescribed age to elect is limited in the same way; if a ward has a natural or other guardian of the person, the ordinary has no power to appoint a personal guardian, but only one of property, and the right of the ward to elect cannot extend beyond the scope of the ordinary's power of appointment. When both parents are dead and there is a vacancy in the entire field of guardianship, the right of election is unlimited. Does the mother cease to be natural guardian on the termination of her widowhood by marriage? We think not. As natural guardian proper, she does not hold by appointment, and has no letters to be revoked. The revocation which takes place on her marriage relates to her guardianship of property, and not to that of the person. After marriage, as before, she is, as mother, the most fit and proper of all persons to have the custody and training of her child—especially if the child be a daughter. There is no hint in the statute that she loses by marriage her position or authority as natural guardian. It is only what comes to her through the ordinary, or with his approval, that lapses when marriage takes place. We are not to be understood as deciding for or against the power of the ordinary to remove her, in a special case, from natural guardianship, but only as holding that it is not obligatory upon him or upon the superior court on appeal, to supersede her where she is not shown to be unfit morally, mentally or otherwise to bring up her child. We are certainly safe in this ruling where she makes the offer of bond and satisfactory security. If, in the case before us, the election of the ward and the application for letters had been restricted to guardianship of the property, it may be that the election ought to have prevailed; but as the real contest was over guardianship of the person, and nothing was shown against the mother's fitness to manage the property, we will not separate the two matters which the court below acted upon as a whole,

which action is excepted to here as a whole, and not otherwise. The new relation of married women to property, brought in by the act of 1866, may have some bearing on the power of a mother to continue in the guardianship of her child's property, notwithstanding her marriage. And even without that act, it is not certain that she could not, after marriage, be appointed guardian of property, or allowed to receive property as natural guardian, by giving bond and security. After the termination of her widowhood, she would have no right to be *preferred* as guardian of property, but that would not necessarily work an incapacity to serve if appointed. We, however, leave the property element of the controversy to stand, not on the theory that it was well decided in and of itself, but for the reason that the real contest was over guardianship of the person, and because the natural guardianship of the person was in the mother, and no conclusive reason for withdrawing it was shown, even if the power to withdraw existed. Putting the action of the court on the plain of discretion, it was not abused.

Judgment affirmed.