## Hood vs. Perry et al.

1. At common law, when a woman who was a guardian married, her letters of guardianship abated, a married woman being incapable of being a guardian; but since the "married woman's act" of 1866, this has been changed. If a woman, who was guardian of her children by her first marriage, re-married and suffered her last husband to use, or in conjunction with him used, the land of such children, and consumed the rents, whether her letters abated upon her marriage or not, she is liable to them for such rents.

(a.) If, under such circumstances, the letters of guardianship abated, she was bound to see that her wards' property was properly cared for; her liability did not cease upon her letters abating; and if she held on to the property of the minors, she would be liable for the rents thereof.

(b.) Upon arriving at age, the wards could cite such guardian, or former guardian, to appear before the ordinary for a settlement of her accounts, whether she was, in fact, guardian at the time of such citation and hearing or not. The power of the ordinary is full and complete to make an account, to hear evidence upon any contested question, and settle finally between the guardian and ward, and to enforce such settlement by execution or attachment for contempt. His jurisdiction and power is as broad as that of a court of equity.

(c.) The acts of 1876 and 1883, declaring that a married woman could act as guardian, executrix or administratrix, are declaratory of the law as it stood at the time of their passage.

(2.) The evidence was conflicting, and there was no abuse of discretion in refusing to grant a new trial.

September 9, 1884.

Husband and Wife. Guardian and Ward. Married Women. Ordinary. Laws. Before Judge Brown. Milton Superior Court. February Term, 1884.

Reported in the decision.

Geo. N. Lester; T. L. Lewis, for plaintiff in error.

J. A. Dodgen; W. J. Winn; E. Faw, for defendants.

Blandford, Justice.

Jamerson Perry died leaving Martha Hood, then Perry,

and three children surviving him; he also left an estate consisting of certain lots of land. Martha, the widow, took out letters of guardianship for the property of the minors, and gave bond and security for such guardianship. She took dower in the lands, and the administrator of Jamerson Perry, deceased, having sold the lands belonging to the estate of deceased other than the lands of which the widow had been endowed, she purchased them for her children. Several years afterward, the widow intermarried with one Hood. She and Hood continued to cultivate these lands until the children became of age.

The children, the defendants in error, had the said Martha cited to appear before the ordinary for a settlement of her accounts, as their guardian. The case was carried by appeal to the superior court. Upon the trial of the case, counsel for Martha Hood insisted that she could not be called to account in the manner which had been adopted by defendants in error, 1st, because, when Martha Perry married Hood in 1868, her letters of guardianship abated; and because she was not guardian at the time the citation issued. The court below did not agree to this rule, and ruled the contrary. A judgment was had in favor of defendants in error, when a new trial was asked for, which was refused by the court, and this judgment is excepted to, and error is assigned thereon.

It was the common law, that when a woman who was guardian married, her letters abated, and that a married woman was incapable of being appointed guardian, and the reason given is, that married women are unable to contract to give bond and security, that they are not *sui juris*, and have become liable to the control of their husbands. These are the reasons commonly assigned for the rule of the common law.

In 1866, the legislature of this state enacted that, as to all property which might be acquired by any woman after the passage of the act, she should hold it as a *feme sole;* that as to such property she was *sui juris;* and it has

been frequently held by this court that a married woman could make a contract; that she could be sued without joining her husband. She is, in all respects as to her separate property, as if unmarried; and while it may be true that she is subject to the control of her husband, yet she is not subject to his control as to her separate estate, nor would she be subject to his control in case she was guardian; as to such guardianship, her powers would be free from the husband's control.

The reason of the rule of the common law no longer exists since the woman's act of 1866. This act was, to a considerable extent, the emancipation act for married women, and we are not inclined to abridge its operations. under this act, this court has held that a married woman, could make a will without the consent of her husband, and yet there was a statute of this state, in force at the time of the passage of the woman's law, declaring that a married woman could not make a will without the consent of her husband; that the effect of the woman's law was to virtually repeal this act. So we hold that the reasons which existed at common law why the letters of guardianship abated upon the marriage of a female guardian do not now exist, and did not so exist when Mrs. Perry became Mrs. Hood. We think the court below was right in his ruling on this point.

But under the facts of this case, if Mrs. Perry, when she became Mrs. Hood, suffered her last husband to use, or in conjunction with him used, the lands of defendants in error, consuming the rents, whether her letters abated or not upon her marriage, she is liable to the defendants in error for such rents. If her letters abated, she was bound to see that her wards' property was properly cared for; her liability as guardian did not cease upon her letters abating, and if she held on to the property of the minors, she is liable for the rent of the same. So in this case, whether the letters abated or not, she is liable.

Under §2598 of the Code, the remedy adopted by

the defendants in error was proper and ample to se-
cure their rights, and the plaintiff in error was liable
to be cited before the ordinary for a settlement of
her accounts, and this is so whether she was in fact
guardian at the time of such citation and hearing be-
fore the ordinary or not. The power of the ordinary is
full, ample and complete to make an account, to hear
evidence upon any contested question and settle finally
between the guardian and wards, and to enforce such set-
tlement by execution or attachment for contempt. Code,
§2599. The next section of the Code, §2600, declares:
" A court of equity shall have concurrent jurisdiction over
settlement of accounts of administrators." It cannot be
doubted that the ordinary has the same jurisdiction and
power as a court of equity in this case; indeed, his juris-
diction is original and that of a court of equity concurrent.
The views taken by the counsel for plaintiff in error were
properly overruled by the court below.

The acts of 1876 and of 1883, declaring that a married
woman could act as guardian, executrix or administratrix,
are declaratory of the law as it stood at the passage of
said acts. See 64 *Ga.*, 258, where this subject is ably
treated by Bleckley, Justice.

As to the facts of this case, it appears from the record
that the same were stoutly contested in the court below,
and every material question presents a conflict of evidence.
The judge who tried this case is satisfied to let this verdict
stand ; his was the discretion to grant a new trial ; he has
exercised it, and we will not interfere.

Let the judgment be affirmed.