[Sac. Nos. 1430, 1431, 1432, 1433, 1434, 1435, 1436, 1437.   Department
One.—May 9, 1907.]

## In the Matter of the Estates and Guardianships of ALICE AMELIA BOYES et al., Minors.

GUARDIAN AND WARD—SETTLEMENT OF ACCOUNTS—CONTEST—WRITTEN GROUNDS OF EXCEPTIONS—FAILURE OF GUARDIAN TO OBTAIN FAMILY ALLOWANCE—EVIDENCE.—In a proceeding for the settlement of the accounts of the guardian of a minor, to which the latter has filed exceptions in writing, the right of the minor to surcharge the account is limited to those matters set up as grounds of contest in his exceptions, and to the matters appearing on the face of the account and report, and the evidence admissible on such proceeding to fix the guardian's liability should also be so limited. Accordingly, where the guardian of minor children, who had also been the administrator of their father's estate, files his account as guardian, claiming credits for money expended for their support during their minority, and the minors filed written exceptions thereto, without raising any issue as to the guardian's duty to have secured for them an allowance from their father's estate, and his neglect in failing so to do, it is error to admit in evidence the inventory, accounts, and proceedings had in the father's estate for the sole purpose of proving the solvency of that estate, and thus establishing the fact that they were entitled to an allowance therefrom, and that the guardian was not entitled to any credits for money of the wards received by him as guardian and applied by him to their maintenance.

ID.—EVIDENCE ADMITTED FOR SPECIAL PURPOSE—WAIVER OF OBJECTION. —The fact that some of the papers in the father's estate might have been admissible and could have been considered for some other purpose, in the proceeding to settle the guardian's account, would not constitute a waiver of an objection to their admission for the purpose for which they were offered nor preclude the guardian from asserting error in their admission and consideration for that purpose. Nor did the guardian waive such objection by subsequently introducing evidence to rebut the fact of the solvency of the father's estate, or to counteract the effect of the papers in any other respect.

ID.—DELAY IN ACCOUNTING—INTEREST CHARGED TO GUARDIAN.—Where there is unreasonable delay by the guardian in making final settlement after the ward is of age, the court, in settling the account, should charge the guardian at least seven per cent interest annually on any balance he may have had on hand when the ward arrived at age, unless there are circumstances absolving him from such charge. In the present case a charge of eight per cent voluntarily

made by the guardian against himself is deemed sufficient, there being no claim asserted that he had received more.

ID.—EXPENDITURES AFTER WARD ARRIVES AT AGE.—If the guardian, after the ward becomes of age, has continued as before with his knowledge and consent to support him or pay money for him out of the estate received by the guardian during the minority of the ward, and there is nothing unfair or unjust to the ward in the transactions, the guardian should be allowed credit in his account with the estate thus applied to the ward's use. If he has overpaid the money in his hands and other estate remains, he may be allowed a lien on the estate for the overpayment, but he cannot be given a personal claim against the ward for such overpayment in any case.

ID.—DUTY OF ADMINISTRATOR TO SECURE FAMILY ALLOWANCE.—Conceding that it is the duty of an administrator of an estate to obtain for minor children a family allowance for them, for a failure to perform such duty as administrator the remedy of the children must be sought in the proceeding for the administration of the estate, or by a suit against him for a breach of that duty, and cannot be had by exceptions to the account of their guardian, he being the same person who was the administrator.

ID.—DUTY OF GUARDIAN TO SECURE FAMILY ALLOWANCE—DISCRETION OF GUARDIAN.—The question whether or not the guardian of minors, whose father had died leaving an estate practically insolvent, should have compelled the estate to support them, or should have supported them out of the guardianship funds, was a matter committed to his sound discretion as guardian. His duty was to pursue that course which would best subserve the interest of the children, but he was not bound as an insurer of the wisdom of the course adopted. He was only bound to use such care, diligence, and sound judgment as a man of ordinary prudence would exercise in matters of similar importance to himself. And the court should be liberal in judging of the conduct of a guardian who, when confronted with such a problem, uses his best judgment and acts with ordinary diligence and prudence, in good faith and with a view to the proper discharge of his duty to his wards. Under the circumstances of the present case, *held*, that the disallowance of credits to the guardian for the support of the wards during their minority was erroneous.

ID.—AMOUNT ALLOWABLE FOR SUPPORT OF WARDS—ORDER OF COURT—CONTRACT FOR SUPPORT—ITEMIZATION OF ACCOUNT.—Although it is the better method to apply to the court for an order fixing a lump sum by the week, month, or year which is to be allowed and paid for the support of a family of minor children, still such previous order is not necessary, and their guardian may make a contract for their support without the sanction of the court, and if it is for a reasonable amount, the court should allow him credit therefor in his account. In cases where such contract is made without

the order of the court, it is a sufficient itemization to state in the report accompanying the account, or elsewhere in the account, the particulars of the contract, and to state in the account proper the sums paid in pursuance thereof. If the guardian acted in good faith, and the contract was fair and just, the fact that the precise expense for each child was not separately provided for by the arrangement made, or was not shown in the account, would not of itself deprive the guardian of the right to credit for money actually paid or applied to the support of the wards, even though he may not be able to trace every item of expenditure to a particular child.

ID.—ORDER SETTLING ACCOUNT—DIRECTION TO PAY TO ANOTHER GUARDIAN.—An order settling the accounts of a guardian of minors who have not yet arrived at age is erroneous, in so far as it directs him to be discharged upon payment of the estate to another person designated as their guardian, in the absence of a showing that any order has been made removing him as guardian or appointing such third person as guardian in his place or as an associate with him.

ID.—SUPPLIES FURNISHED MOTHER OF WARDS—PAYMENT FOR SERVICES OF MOTHER.—Where a guardian claims credit for supplies furnished both to his wards and to their mother, who were living together as one family, circumstances may exist which would make it proper, notwithstanding the ordinary duty of the mother to care for her children without compensation, to pay her for her services out of the ward's estate. In the absence of such circumstances, the credits claimed as payments to the mother should be disallowed.

ID.—GUARDIAN MAY SUPPORT WARD FROM PRINCIPAL OF ESTATE.—Where the income of the ward's estate is insufficient for his support, expenditures out of the principal which are necessary and reasonable, and made in good faith, should be allowed to the guardian, although no authority was obtained from the court in advance.

APPEALS from orders of the Superior Court of Siskiyou County settling a guardian's accounts. J. S. Beard, Judge.

The facts are stated in the opinion of the court.

Gillis & Tapscott, for Appellant.

John H. Magoffey, and R. S. Taylor, for Respondents.

SHAW, J.—On November 27, 1903, Jerome Churchill filed his accounts as guardian of the children of Charles B. Boyes, deceased. Although he was appointed as such guardian on July 10, 1890, this was the first account rendered to the court. There were eight of the children, and a separate account was

CLI Cal.—10

filed for each child. At the time of filing the accounts, five children—namely, Alice Amelia Boyes, Mattie Angeline Boyes, John Ethan Boyes, Fannie Jane Boyes, and Damie Elizabeth Boyes—had become of age. The five adults appeared and each filed written objections to the account relating to him or her respectively. The attorneys for the adults were, at the time of the hearing, appointed by the court as attorneys to represent the three minors, but no written objections were filed in their behalf. The several accounts were heard together, and thereupon the court made a separate order settling each account. From each of these orders the guardian prosecutes a separate appeal. These appeals are numbered on the docket of this court for the Sacramento district respectively as follows: No. 1430, Alice Amelia Boyes; No. 1431, Mattie Angeline Boyes; No. 1432, John Ethan Boyes; No. 1433, Fannie Jane Boyes; No. 1434, Damie Elizabeth Boyes; No. 1435, Dora Maria Boyes; No. 1436, Lutie Anson Boyes; No. 1437, Charles Combs Boyes. The evidence is brought up in a consolidated bill of exceptions and the appeals will be considered together.

1. The entire estate of the wards in the hands of the guardian consisted of the sum of one thousand one hundred and twenty dollars to each ward, derived from a life insurance policy on the life of the father. The credits claimed by the guardian were almost wholly for money expended for their support, and it exhausted the respective estates, excepting those of the two eldest and the two youngest. The guardian, Jerome Churchill, and Margaret Jane Boyes, the mother of the children, were administrator and administratrix, respectively, of the estate of their deceased father, Charles B. Boyes. As such they had filed three separate current accounts of their proceedings in said estate, which had been duly approved and settled by the court, and the estate still remained unsettled at the time of the hearing of the guardian's accounts. Upon the hearing of the latter, the contestants offered, and the court received in evidence over the objection and exception of the appellant, all the papers on file in the estate of Charles B. Boyes, deceased, including the three accounts rendered and settled, the inventory and appraisement, and proceedings resulting in a sale of real estate of the deceased. This evidence was offered to show the solvency of said estate and the value thereof, and expressly in support of the claim on behalf of the children,

that there were sufficient assets of said estate to have supported the children during minority, if an order had been obtained for a family allowance for that purpose to the widow or guardian, that it was the duty of the guardian to procure such an order, that he failed to do so, and that by reason of such failure he cannot, as guardian, be allowed any credit for payments out of the insurance money for such support. The objection of the guardian to the admission of this evidence was that it was incompetent, irrelevant, and immaterial.

We think the court erred in overruling this objection. In substance, the claim sought to be proven by the evidence was that there was another fund available for the support of the children, which the guardian could have obtained for them, or for their use, that it was his duty to secure this fund, and that he had neglected to do so. The written objections to the guardian's accounts contained no suggestion of any such claim and tendered no such issue. One of the elemental rules of the law of evidence is that the evidence must correspond with the allegations and be confined to the point at issue. (Code Civ. Proc., sec. 1868.) If not, it is said to be irrelevant. (16 Cyc., pp. 847, 1111; 1 Taylor on Evidence, sec. 217.) The objection was therefore well taken, if the issues are to be considered as limited by the account and report on the one hand and the written objections on the other. That they are so limited, and that the evidence is to be limited accordingly, is the rule established by the code and by the decisions of this court. Section 1635 of the Code of Civil Procedure provides that upon the hearing of an account, any person interested may appear and file his exceptions in writing to the account, and contest the same. The word "exceptions" was probably used with reference to the equity practice of filing exceptions to the report of a master in chancery. But in the practice which has grown up in this state under this section, the office of such exceptions has been much enlarged, and the word has come to include, not only a statement in writing of the points or matters wherein the credits or charges in an account are claimed to be deficient, defective, or erroneous in law, but also a statement of any affirmative matters of fact, not appearing on the face of the account, which, it may be claimed, require additional charges in favor of the estate, or the rejection of credits

claimed against it. In the case of the *Estate of More*, 121 Cal. 639, [54 Pac. 148], the court says: "Under these provisions, if a person interested in an estate wishes to contest an account presented for settlement by the executor or administrator, he must file his exceptions in writing to the account, setting out specifically the grounds of his objections; and at the hearing he should be held limited to the exceptions so presented." In the same connection the court stated that, without any objections, it was the duty of the court to carefully examine the account and reject all unjust or illegal claims. These principles were again approved by the court in *Estate of Marre*, 127 Cal. 132, [59 Pac. 385], in which it is said that the rule that the exceptions must be in writing and the evidence limited thereto, is a "salutary" one. We do not doubt, however, that, regardless of the filing of exceptions, the court has power, and it is its duty, to scrutinize the account, correct all errors therein, reject all items of credit which appear to be illegal or excessive, and generally to inquire into the truthfulness and accuracy of the items of charges and credits, and of the facts set forth in the accompanying report. And in the course of such investigation it may require and receive evidence to prove or disprove the several items and facts thus under inquiry, although no contest is made. But we are not dealing with an independent investigation set on foot by the court, for none was instituted. We are dealing with a contest created by the filing of written exceptions, and with the right of the contestant to introduce evidence in support of the objections therein set forth. As above stated, his right must be limited by the grounds of contest set forth in his exceptions, and the matters appearing on the face of the account and report. There was nothing in said account or report referring to such neglect of the guardian. It did not show whether the father's estate was solvent or insolvent, nor the amount of its assets, nor whether or not a family allowance had been made therein. The claim in support of which this evidence was offered and given was therefore affirmative matter which should have been stated in the exceptions, in order that the guardian might have notice and an opportunity to answer or avoid the same in any appropriate and legal manner.

We would not say that the admission of such evidence, under such state of the record, would in all cases be error so injuri-

ous as to require a reversal of the judgment or order. But in this case, as we shall presently see, the result of the admission of the evidence was substantially injurious to the appellant and a reversal is necessary. In point of law, these papers, or parts of them, were competent evidence of other facts material to the case as it finally developed. If they had been offered for the purpose of proving such facts, there would have been no error in admitting them. But the record shows that the papers were offered and admitted for the sole and express purpose of proving the solvency of the estate and thereby establishing the proposition that the appellant, as guardian, was not entitled to any credits whatever for any money of the wards received by him as guardian, and applied by him to their maintenance.

Having been received and offered for that purpose over the objection and exception of the guardian, the fact that some of the papers might have been admissible and could have been properly considered for some other purpose, would not constitute a waiver of the objection, nor preclude the guardian from asserting error in the admission of the papers for the purpose for which they were offered and considered. Nor did he waive the objection by his subsequent conduct in introducing evidence to rebut the fact of insolvency or counteract the effect of the papers in any other respect. Having made the objections, and the court having overruled them, and having made the proper exception thereto, the guardian was at liberty to accept the decision for the purposes of the future conduct of the case, and his doing so did not constitute a waiver.

2. The objections stated in the written exceptions filed were: 1. That the charges, credits, and balances were not segregated and separately stated; 2. That the account was uncertain as to the items of charges against the respective wards, and as to the balances due each; 3. That the items of the expenditures were not shown; 4. That none of the items of expenditures for the wards were legal or proper charges against them; 5. That the balances and the computations of interest were inaccurate; and 6. That the guardian had used the principal of the estate without authority from the court.

The court apparently found that none of these objections, except the fourth, were well taken. In each order settling the

accounts it is recited that the account is incorrect in the following particulars:

"a. In the items of debits against said guardian after the time when said minor arrived at the age of majority.

"b. In the items of credits taken by said guardian after the time said minor arrived at the age of majority.

"c. In the items of credits and debits taken by said guardian before the time at which said minor arrived at the age of majority for the reason that said minor should have been supported by the estate of her father, C. B. Boyes, deceased, until she arrived at the age of majority; that the amount with which said guardian should be charged is the sum of $1120, which was received by him the first day of October, 1890, and interest thereon."

In the orders settling the accounts of the wards not yet of age, the first two of the above recitals were omitted; otherwise they were all in the same form.

These recitals are in the nature of findings, and they show the grounds upon which the orders settling the accounts were based. These were,—1. That charges and credits accruing after the ward becomes of age cannot be allowed in settlement of a guardian's final account; and 2. That having neglected to obtain an allowance for their support out of their father's estate in the hands of the administrators, Churchill cannot be allowed credit for actual expenses for that purpose out of the insurance money received by him as guardian. There is no finding that the sums claimed were not paid in support of the children, that there was any uncertainty or inaccuracy, that the accounts were not properly itemized, or that there was not authority to use the principal of the wards' money for their support.

The only credits to the adult wards, accruing after they became of age, are items of interest on the money for each year thereafter, at eight per cent per annum. This was properly included in the accounts. Where there is unreasonable delay by the guardian in making final settlement after the ward is of age, the court, in settling the account, should charge the guardian at least seven per cent interest, annually, on any balance he may have had on hand when they arrived of age, unless there are circumstances absolving him from such charge. Clearly, therefore, there can be no valid objection to

a charge of eight per cent voluntarily made by the guardian against himself, unless he is shown to have received more; which is not asserted.

With regard to credits claimed by the guardian against the adult wards, accruing after they became of age, the circumstances do not show good reason for rejecting them all on that ground alone. In the case of *In re Allgier*, 65 Cal. 228, [3 Pac. 849], there is a *dictum* to the effect that the court, in settling a guardian's account, has no jurisdiction of transactions arising between the guardian and the ward after the latter becomes of age. This, however, manifestly refers to transactions which do not arise out of any settlement between them regarding said estate and are not in any way connected with that estate, nor with any disposition the guardian may have made thereof, either by paying or delivering it to the ward, or expending it for his benefit with his knowledge and consent, or at his request. Where such transactions concerning the estate, or such dispositions of it, have occurred after the majority of the ward, the court, upon the settlement of the final account, not only has jurisdiction of them, but it is its duty to inquire into them, allow the payments and approve or disapprove other dispositions of the ward's estate by the guardian, and allow or refuse credit to the guardian accordingly. If the guardian, after the ward becomes of age, has continued, as before, with his knowledge and consent, to support him, or pay money for him, out of the ward's estate received by the guardian during the minority of the ward, and there is nothing unfair or unjust to the ward in the transactions, the guardian should be allowed credit in his account with the estate thus applied to the ward's use. If he has overpaid the money in his hands and other estate remains, he may be allowed a lien on the estate for the overpayment, but he cannot be given a personal claim against the ward for such overpayment in any case. (*Estate of Kincaid*, 120 Cal. 203, [52 Pac. 492].)

In the account with Mattie Angeline a credit is claimed for her support during the year 1899 as a member of the family. It appears from the statement in the account that she was not at home during that year and did not receive the support claimed. Nothing is said about this in the briefs and it may be a mere inadvertence or clerical error. On the face of the account it appears to be an improper credit.

The principal ground for the rejection of the credits appears to have been the failure of the guardian to secure their support out of the estate of their father. The fact that he was one of the administrators of that estate is of no importance here. For, if his duty as administrator required him to obtain a family allowance for them, and he failed to do so, the remedy must be sought in the proceeding for the administration of the estate, or by a suit against him for a breach of that duty, and not by exceptions to the account of the guardian. Nor does good reason appear for the rejection of all the credits to the guardian because of such failure, conceding that, under some circumstances, it might become his duty, as guardian, to press a claim against the father's estate for such family allowance.

If that estate was in fact insolvent, no family allowance for a longer period than one year could have been made. Until July 15, 1891, which was fifteen months after the issuance of letters of administration on the estate of Boyes, the children were all supported out of the estate of Boyes, or at all events, from some source other than the money received by the guardian for them. The credits claimed by the guardian for their support did not cover any part of this period. Consequently, if we assume that the estate was insolvent, the guardian could have obtained no family allowance during the time for which he claims credit for their support in these accounts as guardian, and his failure to obtain it was no ground for disallowing his credits.

The assets of the father's estate were appraised at $58,564.34, and the debts allowed, exclusive of subsequently accrued interest, amounted to only $31,036.43, and, hence, the estate appeared to be solvent. But the assets consisted chiefly of horses and mortgaged lands, and at the time of the death of Boyes, and for many years afterwards, they were unsalable at the appraised value. The horses could not be sold for cash, and after several years they were sold on credit and a chattel mortgage taken on them as security for the price. This debt the administrator has been unable to collect, and it is now represented by a mortgage for some forty thousand dollars, including interest, on certain Los Angeles property, which has been in litigation until recently. The real property of the estate was sold by the administrators in 1895, but it did not

bring enough to pay the mortgages thereon. The mortgagees, Mr. Churchill being one of them and interested in all the mortgages, discounted their claims more than ten thousand dollars, and accepted the proceeds in full satisfaction. In order to preserve the estate and carry it over the period of low prices without sacrifice of the property, the insurance money of the children was borrowed for the use of the estate, at eight per cent annual interest, upon an arrangement with the mother that the interest was to be applied as far as it would go, in support of the children. This insurance money was paid out upon the debts of the estate. This was not sufficient to satisfy the demands of the creditors, and Mr. Churchill advanced of his own means and paid upon the debts of the estate and expenses of administration, sums which, with interest to November 25, 1902, amounted to $26,561.45, which sum is still owing to him from said estate. By reason of a recent general advance in the values of real estate in Los Angeles, the Los Angeles mortgage, taken to secure the debt for the horses, has become worth its face. The evidence shows, without serious conflict, that there was no time, until this advance, at which the property of the estate could have been sold for money enough to have paid the debts of the estate and the expense of administration. The advance in the value of the Los Angeles property began only two or three years before the filing of the account, and it does not appear that the mortgage held by the estate thereon could have been collected before the accounting by any means within the control of the administrators.

These were the circumstances under which the guardian was called upon to determine his conduct of the wards' estate. It was certain that if the estate of the father had been made to pay out further sums by way of a family allowance, amounting to anything near the sums shown to have been paid by the guardian in its support, its insolvency would immediately have been demonstrated. This would, perforce, have compelled the cessation of any payments on such family allowance. The attempt to obtain the family support in that way would have defeated itself. The estate was practically insolvent. It is extremely doubtful whether he would have been justified in pressing against the estate a claim for such allowance, under such circumstances, and if he had done so, whether he would not have been chargeable with malfeasance either in

his capacity as guardian or as administrator. But at all events it must be conceded that the question whether or not he should have compelled the estate to support the family, or should have supported them, as he did, out of the guardianship funds, was a matter committed to his sound discretion as guardian. His duty was to pursue that course which would best subserve the interests of the children, but he was not bound as an insurer of the wisdom of the course adopted. He was only bound to the use of such care, diligence, and sound judgment as a man of ordinary prudence would exercise in matters of similar importance to himself. In such circumstances, he must act according to his own best judgment and discretion. The court should be liberal in judging of the conduct of a guardian who, when confronted with such problems, uses his best judgment and acts with ordinary diligence and prudence, in good faith and with a view to the proper discharge of his duty to his wards. (*Estate of Schandoney*, 133 Cal. 393, [65 Pac. 877].) There appears to be no doubt that the guardian, in the present instance, was acting throughout the entire proceeding in the utmost good faith. Indeed, he went far beyond the requirements of the law in voluntarily advancing his own money to preserve the property of the estate of the father from sacrifice, and although this was done in his capacity as administrator, he is entitled to have it considered in judging of the wisdom and good faith of his conduct as guardian. The court below erred in assuming that there was a hard-and-fast rule which prevented the allowance of credit to the guardian for the money thus applied in support of the wards. Upon the case as presented, he should have been allowed credit for the money properly expended for the support of the wards during their minority. And unless it should appear upon a new trial that the money properly expended for that purpose for the adult wards, after their majority, was expended without their knowledge and consent and voluntarily on his part, we think he is also entitled to credit therefor, to the extent of the money in his hands belonging to them, respectively, but not to a personal claim for any excess in his favor.

3. Complaint is made that the charges and credits were not properly itemized. These objections seem to have been disregarded, but in view of another trial it becomes necessary to consider them.

In each account there are three items of credit against the
ward for maintenance for certain stated periods, and they are
identical. These items and periods are: $150.08 from July 15,
1891, to March 1, 1893; $239.92 from March 1, 1893, to Sep-
tember 1, 1895; and $44.80 from September 1, 1895, to March
1, 1896. They exactly balance corresponding charges against
the guardian, for interest accruing during the same periods
upon the money of the respective wards loaned to the estate
of Charles B. Boyes, deceased, as above stated. The expla-
nation given in the report is that it was arranged between the
administrator of the estate and the mother of the wards that
the mother and children should all live together as members
of the family; that there should be paid out of the funds of
said estate for their maintenance a sum equal to the interest
which would accrue on the money so borrowed by the estate,
and that these sums paid for maintenance of the children
should be charged against them by the guardian and that he
should credit them with the same sums in his accounts as
guardian, as interest collected on the money loaned. The form
of the items will be shown by quoting one of them. It is as fol-
lows: "September 1, 1895. By amount paid for the maintenance
of said minor from March 1st, 1893, to September 1st, 1895—
$239.92." It is claimed that this is not a sufficient specifica-
tion of the items of charges and credits; that it does not ap-
pear how much was paid on account of any particular child,
nor how much of the supplies furnished was consumed by each.
A family of children, under any ordinary circumstances,
should be kept under the care and nurture of their mother,
if possible. It is seldom possible, when this is done, to have
accurate accounts kept showing the precise expense on ac-
count of each child. It is customary to apply to the court for
an order fixing a lump sum by the week, month, or year, which
is to be allowed and paid to the mother for such maintenance.
This is perhaps the better method, as it serves as a protection
to the guardian against a subsequent revision of his conduct,
and also to some extent as a protection to the children against
excessive payments. It also avoids the great expense that
would be involved in the keeping of separate accounts of sup-
plies furnished to each child. We do not understand, how-
ever, that a previous order of the court is necessary. (*In re
Beisel*, 110 Cal. 270, [40 Pac. 961, 42 Pac. 819].) The guard-

ian may make a contract for such support without the sanction of the court, and if it is for a reasonable amount, the court should allow him credit therefor in his account. (21 Cyc., p. 66.) Guardians are not always men of great efficiency in the matter of bookkeeping, and estates are not always of sufficient amount to justify an elaborate system of accounts. In cases where such contract is made without the order of the court, it is a sufficient itemization to state in the report accompanying the account, or elsewhere in the account, the particulars of the contract or agreement made to secure the maintenance of the ward, and to state in the account proper the sums paid in pursuance thereof. The method pursued in the account in question was a sufficient compliance with this rule. It would be the duty of the court to scrutinize the contract or arrangement whereby the money was applied to maintenance, and to see that it was just and fair, and that the sum for which credit was claimed did not exceed the sum paid in pursuance of the agreement. But if the guardian acted in good faith, and the contract was fair and just, the fact that the precise expense for each child was not separately provided for by the arrangement made, or was not shown in the account, would not, of itself, deprive the guardian of the right to credit for money actually paid or applied to the support of the wards.

The bulk of the credits claimed by the guardian consists of a list of items paid on general account for the support of the family as a whole, during the years following March 1, 1896, the particular ward being charged with his proportion of the entire sum for each year separately. The items of expenditure are given in great detail and no objection is made on that account. But it is claimed that it is not fair to the respective wards that each should be thus charged with a numerical proportion of the total expense of the support of the whole family, regardless of the fact that many of the items may have been incurred for some one or more of the other members exclusively, and that the account furnishes no means of ascertaining whether or not all the members participated equally in all the supplies furnished. With regard to food furnished no such segregation of the account would be possible. Nor can we say that it would be unreasonable to keep the family together, and charge each with the same share of the total expense of that character, although the appetite of one may have

far exceeded that of another. The same would be true of many other things consumed in the household. The slight inequalities that would occur between the different children in this respect would be more than compensated by the advantages of having them reared as a family under the care of a mother, and surrounded by the associations of brothers and sisters. It would be entirely proper for the trial court to invite or inaugurate investigations in regard to this matter, and if it found that the expenses for the respective children were substantially unequal, and that any fair conclusion could be reached in regard to the amount justly chargeable to each ward, to give or refuse credit accordingly, and to adjust the credits between the respective wards according to the amounts justly chargeable to them. We cannot, in advance of a new trial, lay down a specific rule to govern the court in this particular case. In general, it must be said that if the guardian has acted in good faith in expending money for the benefit of the wards, and the expenses thus incurred have not been unreasonable or excessive, he should be given the proper credit for the money actually so expended, although he may not be able to trace every item to the particular child. In matters of this nature, much must be left to the sound discretion of the guardian by the trial court, and, after it has passed upon the questions, much must be left to the sound discretion of the trial court by the appellate tribunals. It may be a difficult task for the court below to examine into these matters and determine how much of the credits claimed by the guardian should be allowed in one account and how much in another, but it should endeavor to adjust them between the respective wards, if the evidence enables it to do so. It is not justified in rejecting all of the credits because some of them are improper.

4. The order settling the accounts as to the two youngest children provides that the guardian shall be discharged upon payment of the balance to one C. Henry Haight, their guardian. It does not appear that any order has been made removing Mr. Churchill as guardian, or appointing Haight as such guardian in his place, or as an associate with him. If, in fact, no such order of appointment has been made, the order for payment to Haight was erroneous.

5. It appears from the evidence that the supplies for which the guardian claims credit were used for the support of the

entire family, including the mother. There is some evidence of an understanding that she should receive support to this extent out of the children's estate, in return for her services in taking care of them. It does not appear that the court below decided as to the existence or validity of such an agreement. Ordinarily, a mother owes to her children the duty of nurturing and caring for them, without compensation from their estate, but circumstances may exist which would make it proper to pay her for such services out of their funds, and to make an agreement to that effect. If the court, upon another trial, finds that it was not proper to charge the children for her support, it should make such deduction on that account from the credits for support, as it may deem reasonable from the evidence.

6. It is claimed that the guardian cannot be given credit for money paid out of the principal of the estate in support of the wards, because he did not obtain a previous order from the court authorizing such use of the principal. We have no statute on the subject. The authorities are conflicting. We believe the more reasonable rule to be that where the income is insufficient, and the expenditures out of the principal are necessary and reasonable, and are made in good faith, the guardian should be allowed the credit, although no authority was obtained from the court in advance.

In each case the order appealed from is reversed.

Angellotti, J., and Sloss, J., concurred.

Hearing in Bank denied.