[S. F. No. 414. In Bank.—February 25, 1898.]

## In the Matter of the Estate and Guardianship of ARCHER KINCAID, a Minor.

GUARDIAN AND WARD—ADVANCES AFTER MAJORITY—ACCOUNTING—JURISDICTION.—The superior court acting in probate for the settlement of the estate of a minor, proceeds *in rem*, and has only jurisdiction to settle the accounts of the guardian with respect to the ward's estate, received by him as guardian; and if, at the time the ward reaches his majority, there is no such estate left, the court has no jurisdiction to settle the accounts of the guardian, and render judgment against the ward, for advances made by the guardian after the ward attained his majority, notwithstanding an agreement between them that the guardianship should continue, and that the advances should be made as guardian.

APPEAL from a judgment of the Superior Court of San Mateo County. George H. Buck, Judge.

The facts are stated in the opinion of the court.

George W. Fox, for Appellant.

George C. Ross, and Edward F. Fitzpatrick, for Respondent.

TEMPLE. J.—Alexander Gordon was appointed guardian of Archer Kincaid, a minor, December 23, 1882. Kincaid became of age May 24, 1890. The guardian upon assuming the duties of his trust received for his ward one thousand dollars in cash, and no other property came to his hands during the minority of his ward. This money was entirely consumed in the support and education of the ward before he reached majority, therefore, when the guardianship ceased Gordon had in his possession no estate whatever of the ward.

The guardian had, however, at the request of his ward, and out of friendship to him, given him educational advantages far beyond what would have been justified by the means of the ward in his hands. And after Kincaid became of age Mr. Gordon continued to advance money for that purpose; Gordon paid his expenses at the University and at the Hastings Law College until his former ward was admitted to practice law in all the courts of the state.

In 1894, and long after the ward reached his majority, a decree of distribution was made in the estate of Kincaid's mother, of which estate Gordon had charge as executor; by which nearly five hundred dollars in money was distributed to Kincaid. Mr. Gordon retained this amount as a payment upon the advancements made by him, but even after this credit there was still due Mr. Gordon for advances made over eleven hundred dollars. Evidently to prevent a plea of the statute of limitations, Gordon on the fifteenth day of January, 1895, presented his final account as guardian for settlement in the probate court, and asked for a decree adjudging that his former ward was indebted to him in the sum of eleven hundred and fifteen dollars and eighty-one cents. In the probate court such a decree was made, and it was also found that the money paid and advanced by Gordon since the ward reached his majority was advanced in his capacity as guardian; and no relation other than that of guardian and ward, with respect to the items of the account, ever existed between Gordon and Kincaid.

1. The findings are contradictory. When it was found that the ward reached his majority in 1890, it was thereby determined that the guardianship then ceased. (Code Civ. Proc., sec. 1753.) True, the probate court retained jurisdiction to compel an accounting, and no doubt retained jurisdiction for that purpose at the time this accounting was had. If such accounting has been delayed the court had undoubted jurisdiction to pass upon all questions as to the care of the estate, which the guardian received as guardian during the wardship down to the accounting; and inasmuch as any money or property received from the guardian by the former ward, since reaching majority, was so much property delivered, the court would also allow credit for all such sums or property. (*Crowell's Appeal*, 2 Watts, 295; *Gilbert v. Guptill*, 34 Ill. 112.)

There is some difference as to the extent to which courts will consider post-majority transactions in the settlement of the accounts of a former guardian. The difference probably originated from the fact that the accounts were generally settled by courts of equity, whose jurisdiction was not so limited. In this case we are relieved from any embarrassment upon the subject, because it is conceded that at the time the ward reached his major-

ity there was no estate belonging to the ward in the hands of the guardian. Under such circumstances an agreement between the former ward and his late guardian that the guardianship should continue, and that as guardian the late guardian would care for and educate the ward is only an agreement for advancements. Had there been an estate the jurisdiction of the court would only have continued as to the estate and.to enforcing an accounting as to such estate. When the guardian assumed his office he contracted .not only to manage the estate according to law and for the best interest of the ward, but also, that at the termination of his trust he would account for the property, estate and moneys of the ward in his hands, and would pay over and deliver such as remained to the person entitled thereto. This is the account which the probate court has jurisdiction to determine. No jurisdiction is given to ascertain a balance against a former ward, except as that will tend to show what the guardian must pay or deliver to his former ward. It is in the nature of a proceeding *in rem,* and the estate is the *res,* and, after majority, the only matter of which the court has jurisdiction.

It is thought that Kincaid is guilty of ingratitude and dishonesty because he now refuses to acknowledge his indebtedness to Gordon, and to provide for payment out of an estate which was never in the hands of his guardian. But all this is based wholly upon the proposition that Kincaid requested the advancement after majority. Eliminate these promises and the matter will present a different appearance. Yet these facts show that it is a matter over which a guardian's court has no jurisdiction.

As the accounting is in the nature of a proceeding *in rem,* a finding that the former ward was indebted to the former. guardian would have no force or effect in an independent proceeding. It could affect the estate only, and would not even be evidence to charge the former ward in another proceeding. The decree binds neither ward nor guardian, except as to the estate which the guardian received as guardian. This being so, I do not see that the court in this proceeding has any concern with the other questions raised. As to the charge of interest on the one thousand dollars which the guardian did receive and which he disbursed, there is nothing to show error.

That portion of the decree which determines that the guardian has properly disbursed all the estate in his hands as guardian is affirmed; that portion which adjudges and determines that his former ward is indebted to Gordon is reversed.

Harrison, J., Garoutte, J., and Henshaw, J., concurred.

VAN FLEET, J., dissenting.—I dissent. The court found: "That notwithstanding the fact that said Kincaid arrived at his majority on the twenty-fourth day of May, 1890, by common and mutual consent of said Kincaid and the said Gordon the relationship of guardian and ward continued, and the said Kincaid received from the said Gordon the amounts of money set forth and contained in the said account, subsequent to the said twenty-fourth day of May, 1890, and the said Gordon received for the account and benefit of said Kincaid, as such guardian, the sums of money and property set forth and contained in said account."

And it is further found that all sums of money paid out for or advanced to said Kincaid, subsequent to said date, were paid and advanced "at the special instance and request of said Kincaid, and were so paid and advanced by said Gordon, in his capacity as guardian," and that as to said account no other relation ever existed between the parties.

The material and substantive question arising and presented by the appeal is, whether the superior court, sitting in probate, had jurisdiction, in settling the account, to adjust and settle, as a part thereof, the transactions accruing and had between Gordon and Kincaid subsequent to the date when the latter reached his majority?

It is commonly said that the guardianship of a minor's estate terminates at this majority. This is true to the extent that the powers and authority of the guardian cease at that time; but the responsibilities and consequences of the relation continue until the final discharge of the guardian by the court, or until he settles with his late ward and turns over the estate to him. Until one or the other of those events happens the guardian continues to be, as between himself and the court which appointed him, still a guardian; though he is not such as to third persons. For this reason the statute of limitations does not com-

mence to run in his favor on his ward's majority. (*Gilbert v. Guptill*, 34 Ill. 112, 139.) It is therefore undisputed that a guardian may be compelled, by the court which appointed him, to account after the majority of the ward, and no mere lapse of time, however great, will bar that remedy.

It is also obvious that, on such accounting, the court must in some cases take into consideration transactions taking place after the ward's majority. If the guardian has, after that date, delivered to him all or some portion of his estate, or paid him money on account thereof, such facts necessarily go to a satisfaction, total or partial, of the guardian's liability; and it has never been disputed that, for such items, the guardian is entitled to an allowance on the settlement of his account.

But it has been contended in some cases that a court of probate cannot, in settling such an account, charge the guardian with property of the ward received after the majority, or credit him with sums paid to the ward after that time, unless paid out of the estate received during the minority; and, also, that in an action upon the guardian's bond the sureties cannot be held liable for any property not received by the guardian during the minority.

There can be little doubt that this rule as to the liability of the sureties on the bond is correct; but that does not affect the liability of the guardian himself. The only question here is whether as between the guardian and his late ward, an accounting in court can embrace such transactions; and we believe that in every case in which the question has been raised, and in which the decision has not turned on some statutory limitation on the powers of the particular court, it has been held that such transactions can and must be considered.

It must be borne in mind that jurisdiction over guardians and their accounts is strictly equitable, and this jurisdiction was originally confined to the court of chancery. In this country it has often been conferred upon courts of probate, surrogates, ordinaries, orphans' courts, and the like; but the proceedings, in whatever court carried on, are equitable in their nature, and governed by the rules of equity. Leaving out of consideration, then, for the moment any possible limitations of the power of probate and similar courts, we may consider the case as if the

accounting were being had in the court of chancery in England. In that court the question involved would be determined by these familiar rules of equity: That equity will not do justice by piecemeal, but will determine the whole controversy between the parties, even though there be a portion of the controversy over which, if it stood alone, equity would not have jurisdiction; and that one who acts as guardian, trustee or the like, without due appointment or authority of law, is, in equity, liable to the same extent as if he lawfully had the authority he has assumed and is entitled to like credits and allowances (except sometimes as to compensation for services).

According to these principles it is evident that if, with the assent or at the request of the ward, the guardian continues to act as such after the ward's majority, a court of equity will treat the guardianship as still subsisting, will settle the account between the parties on that basis, and will not send them (or even permit them to go) to a court of law to sue with respect to the transactions after the ward's majority.

Thus in *Mellish v. Mellish*, 1 Sim. & St. 138 (decided by Sir John Leach and affirmed by Lord Eldon), the guardian, at the request of the ward, continued, after her majority, to manage her estate. During the period after her majority he advanced her, out of his own pocket, and paid to others on her account and at her request, sums of money amounting, as he claimed, to twenty-two thousand pounds sterling, and, as she admitted, to fourteen thousand pounds sterling. His accounts as guardian never having been settled, either with the ward or by the court, he commenced an action at law against her to recover the advances made after her majority. The ward thereupon filed a bill in chancery against him to enjoin him from suing at law, on the ground that these advances were made by him as guardian, and formed an integral portion of his account as guardian, which could only be settled in chancery and as a whole. The injunction was granted (on condition that she pay the money claimed into court), and the court said:

"I consider that the unbroken continuance of the management of the property by the guardian, after the plaintiff had attained her age, is, in effect, a continuance of the guardian-

ship as to the property; and that the same principles must be applied to this account as to the accounts during the minority."

In *Pyatt v. Pyatt*, 46 N. J. Eq. 285, a guardian, in accounting before the orphans' court, credited herself with certain sums expended by her for her ward's maintenance after majority. It was held that these credits should have been allowed by the orphans' court. It is there said:

"The cost of maintenance after majority was disallowed by the ordinary on the ground that the orphans' court had no jurisdiction over matters occurring between the parties after the ward became of age. He agreed with the orphans' court in believing that an understanding existed between the mother and daughter that the daughter's money in her mother's hands was to be used in supporting the family, including the daughter, and that the money was so used, but he decided that the account must close at the termination of the guardianship, and the balance be ascertained and decreed as of that date. We do not concur in this view of the law. The orphans' court is a court of general jurisdiction over the subjects committed to its cognizance. It partakes of the powers of a chancery and prerogative jurisdiction, being instituted to remedy and supply the defects in the powers of the prerogative court with regard to the accountability of executors, administrators and guardians; and such construction should be given to the statutes establishing and regulating its authority as, consistently with the obvious intentions of the legislature, will advance and extend their immediate provisions. Our present statute (Revision, p. 753, sec. 2) invests the orphans' court with full power and authority to hear and determine all controversies respecting the allowance of accounts of executors, administrators, guardians and trustees under wills, and authorizes it to issue process to compel such persons to account for the estate in their hands. The court may also (sec. 160) compel obedience to its process, orders, and sentences by imprisonment or distress, and (sec. 161) its decrees or orders whereby a sum of money is ordered to be paid by one party to another, being properly recorded, have the same liens and priority as judgments of the circuit court, and like executions may issue thereon. This language, we think, imports that the orphans' court may require executors, administrators, guardians, and trustees under

CXX. CAL.—14

wills to render accounts of the estates committed to them, and may ascertain the condition of the estate in their hands, upon such accounting, as fully as can the court of chancery. (Citing *Mellish v. Mellish, supra.*) According to this doctrine, the accountability of a guardian for his ward's estate remains the same after the ward's majority as before, until he has transferred the estate to the ward, or until the parties themselves have agreed to place the guardian's responsibility on a different footing. The jurisdiction of the orphans' court embraces this entire accountability. It would be a narrow, not a liberal, construction of the statutory terms which authorizes courts to compel guardians 'to account for the estates in their hands,' to say that it can compel such an account only up to the time when the ward became of age, and that guardians must 'account for the estates in their hands,' so far as their subsequent dealings with such estates are concerned, in some other tribunal." (See, also, *Mulholland's Estate*, 154 Pa. St. 491.)

In *Bombeck v. Bombeck*, 18 Mo. App. 26, 34, the court said: "The position taken by the appellant involves the proposition that under no state of circumstances can the probate court render judgment against a guardian for money which came to his hands after the ward arrives at full age. This is not sustainable. . . . . Where a guardian under color of his office, either during the minority or majority of his ward, obtains possession of his ward's money or property before final settlement, he is estopped to deny, when called into court as guardian to account for it, that he received it as such guardian. . . . . He should not be heard to say: 'It is true I wrongfully, *colore officii*, obtained this money, but will account for it only in an individual character.' Especially must this be so when he seeks to escape the measure of liability which would attach to the fund as a trust in his hands as guardian."

In *Hood v. Perry*, 73 Ga. 319, it was held that, even if marriage of a female guardian terminated the guardianship, her liability continued so long as she held the property, and that the ordinary had jurisdiction to settle her accounts, including transactions after the letters abated; and the court said:

"The power of the ordinary is full, ample, and complete to make an account, to hear evidence upon any contested question,

and settle finally between the guardian and ward, and to enforce such settlement.. . . . . It cannot be doubted that the ordinary has the same jurisdiction and power as a court of equity in this case."

Whatever be the rule in other states, in California the superior court, even when sitting in probate, possesses all the powers of a court of equity which are necessary or incidental to the matter before it, and is guided and controlled, in matters of guardianship and the like, by the rules of equity. (*Estate of Moore*, 96 Cal. 522, 528-30; *Estate of Clos*, 110 Cal. 494, 501-02; *Estate of Clary*, 112 Cal. 292, 294.) The case of *Estate of Beisel*, 110 Cal. 267, 275, is an interesting and instructive example of this doctrine, and it is in principle precisely like the case at bar. In that case it was held that the superior court, sitting in probate, properly gave credit to a guardian for money expended by her for the maintenance of the wards before she had received her appointment as guardian. The court there said that though at the time this money was expended there were no letters of guardianship upon the children's estates, yet "she is chargeable in equity as a *quasi* guardian or trustee of their estates, and the accounting must be deemed in the nature of an accounting in equity, and determined upon equitable principles." It is not easy to see how expenditures made before the legal guardianship commenced are any more within the jurisdiction of the probate court upon the settlement of accounts than those expenditures made after the legal guardianship terminated. In either case they are without any legal authority, but in both cases they are treated in equity precisely as if they had been made with such authority. This equitable doctrine is as binding upon a probate court as upon any other. If, then, it appears that the relation of guardian and ward has continued in fact after the termination of the strictly legal relation, the account of the guardian should embrace all the transactions, as well after as before the majority; and any court, whether probate or other, settling the account must settle it as a whole, and upon the same principles after as during the minority. And in such settlement transactions fairly referable to the *de facto* relationship of guardian and ward should be treated as such and not as transactions between strangers.

The cases cited by appellant are not opposed to this doctrine. Most of them require no special notice, for they are either mere dicta that guardianships terminate at majority, not raising this question, or are suits against sureties on guardian's bonds, or otherwise between strangers. The only cases which could be supposed to bear on this question are the following:

In *Crowell's Appeal,* 2 Watts, 295, it was not claimed that the relation of guardian and ward had continued beyond the majority, even in fact. The guardian merely claimed credit for goods sold by him to the late ward after his majority. These transactions were, on their face, between strangers. The court in refusing to consider those items gave no reason whatever, except that it would be inconvenient to take them into consideration in settling a guardian's account.

The case of *People v. Seelye,* 146 Ill. 189, is the one chiefly relied on by appellant. That was an action against the sureties on the guardian's bond, and, therefore, could not involve the question at issue here. But the court went out of its way to say that the probate court, in settling the guardian's account, had no jurisdiction to charge the guardian with property received by him after the ward became of age. This was put upon a very narrow interpretation of the powers of the probate court, which may be in accordance with the law and course of decision in that state, but which differs widely from the rule in this state. That this was the whole ground of the decision on that point will be seen by examining the comments of the court on some of the cases to which we have already referred. The court distinguished those cases by saying that they arose in courts having a . broader jurisdiction in equity than was allowed to probate courts in Illinois, and that they did not involve the question of the liability of sureties on the guardian's bond. It is apparent from that decision that that court would not agree with the views of this court expressed in *Estate of Beisel* and *Estate of Moore, supra,* and that the law is so far different in Illinois that the case is not authority here. It should also be noticed that no *de facto* guardianship was proved or claimed in that case.

The case of *In re Allgier,* 65 Cal. 228, does undoubtedly appear to be in point; but an examination of that decision will

show that, for several reasons, it is not an authority on this question.

In the first place, all that was said on this subject in that case was pure dictum. The case was not one of the settlement of an account by a guardian, but of one presented by the executors of a deceased guardian. The court, following its former decisions, held that the probate court had no jurisdiction of such an account. This, whether right or wrong, ended the case.

In the next place, this matter was not at all argued. The appellants in their brief assumed, without citing any authorities, that items accruing after the majority of the ward could not be considered. To this proposition the respondents made no reply, but confined themselves to a discussion of the other question. As there was no argument on this point, nor any authorities cited by counsel or the court, the decision cannot be considered as of weight.

But, lastly, the principle of that case is entirely opposed to the later decision in *Estate of Beisel, supra* (which was rendered in Bank), and ignores the principles laid down in the cases of *Estate of Moore, Estate of Clos,* and *Estate of Clary,* above referred to.

It cannot be denied that it is grossly unjust and inequitable to turn this guardian over to a court of law for his remedy. If the items in controversy were on the other side of the account—if this guardian had, under color of a continued *de facto* guardianship, received property of the ward after the termination of the minority, the ward would certainly not be sent to law to sue for it, and the statute of limitations would not run in the guardian's favor. Under such circumstances, as was said in *Bombeck v. Bombeck, supra,* the guardian would be held estopped as guardian, since otherwise he would not have received it at all. So in this case Kincaid, under the circumstances found, should be estopped to deny that Gordon advanced this money as guardian; and, if it was advanced in that capacity, it is essentially a part of the guardianship account and should be settled on the same principles.

I think the judgment should be affirmed.

McFarland, J., concurred.