[Civ. No. 9962.  Second  Appellate  District,  Division  Two.—October 29, 1934.]

In the Matter of the Estate and Guardianship of AMER-ICO  GIAMBASTIANI,  an  Incompetent  Person. FRANK  T.  HINES, Administrator of Veterans Af-fairs, etc., Appellant, v.  EGISTO  GIAMBASTIANI, Guardian, etc., Respondent.

H. C. Veit and J. C. Shunk for Appellant.

Albert Sidney Brown for Respondent.

WILLIS, J., *pro tem.*—The ward herein was discharged from the United States army at Camp Lewis, Washington, in January, 1918, for disability, and was at once brought back to Los Angeles, his home, by his brother, who is respondent guardian herein. Deeming his brother incompetent to care for himself or his property, respondent took charge of him, managed and paid charges and expenses of his property affairs and supported and maintained him, chiefly out of respondent's private resources, until respondent was regularly appointed as his guardian on October 9, 1929. During this interim the ward was owner of a one-fifth interest in a residence property and owned some stock in a feed and fuel corporation of which respondent was manager,

all in Los Angeles County, a lot in Orange County and a life and health insurance policy. On August 15, 1927, the ward was adjudged an insane person and committed to Norwalk state hospital, where he has since remained. On September 25, 1931, respondent filed his first account as guardian, showing expenditures for and on behalf of the ward over the period from January, 1918, to date of account in the sum of $11,844.78, with credits from stock on dissolution of the corporation mentioned above in 1927, from the health policy and from the United States veterans' administration as compensation, in the sum of $525.16, aggregating the sum of $3,549.56, and leaving a balance of $8,295.22 advanced and expended by respondent. Without objection this account was approved and settled as presented, on October 19, 1931, with certain allowances made for guardian's and attorney's services.

On May 27, 1932, on appellant's petition, the probate court entered an order exempting funds received from the veterans' administration from payment of claims of creditors. On February 16, 1933, on respondent's petition, the court entered an order allowing him to reimburse himself for these advances out of moneys received from veterans' administration under the provisions of the World War Veterans Act, or from any source, but only after sufficient funds coming into the estate have been used for the proper support and maintenance of the ward. On March 24, 1933, respondent filed his second account current, showing expenditures during the period in the total sum of $645 and receipts aggregating $3,589.14, of which amount the sum of $2,645.81 was received from the veterans' administration under said act. Such account also showed a credit of $2,278.64 against the former balance of advances. To this account appellant, under 'authority of the act above mentioned, filed objections, and after a hearing and trial the probate court overruled all objections and approved and settled the second account, on August 5, 1933. By this second account and the order settling it respondent was allowed a credit of $2,278.64 against the balance of $8,295.22 previously established as a balance of his advancements on behalf of the ward, leaving a present balance of $6,016.58 on such previous advancements, with the sum of $500 funds on hand in bank to the credit of the ward, together with a continuing income

of $100 per month from the veterans' administration under said act.

After hearing on this account and objections thereto, the probate court filed findings and conclusions, wherein among other matters the court found that the claim of respondent for past advances before appointment was not the claim of a creditor; that respondent acted as "guardian *de facto,* or as trustee" of said ward from the time of the latter's discharge from the army in 1918 until the time of appointment of respondent as guardian in 1929; that the expenditures made by respondent on behalf of the ward prior to the appointment in 1929 were not voluntary; that the funds received from the veterans' administration were not exempt from respondent's claim for reimbursement and that such claim is a proper charge against the estate and any funds coming into the estate from any source whatever. From the order settling this second account this appeal is taken.

On this record appellant predicates three claims of error, namely: (1) That the moneys advanced and maintenance furnished by respondent prior to his appointment were voluntary, and that it was error to decide to the contrary. (2) That respondent's claim for such past advances and expenses paid prior to his appointment was the claim of a creditor, and that it was error to decide contrariwise, thereby avoiding the effect of the exemption provided in the World War Veterans Act. (3) That respondent did not act as guardian *de facto* prior to his appointment, and that it was error so to decide. As an alternative, appellant claims error in allowing credit to respondent as a *de facto* guardian for sums in excess of the amount received by him for the ward during such *de facto* period of guardianship.

As claimed by appellant and conceded by respondent, it is the recognized rule in this state that orders settling guardian's accounts are not conclusive and do not preclude the probate court at hearings on subsequent accounts from a reexamination of former accounts, nor from correcting, revising or modifying the amount of any item or from entirely disallowing the same. (*Guardianship of Cardwell,* 55 Cal. 137.)

Appellant's first point is that the court erred in finding that respondent's advances and expenditures of money for his brother up to his appointment as guardian were not

.voluntary. It has been held that in all cases of this character the question is one of intention. If at the time the services were originally rendered or advances made they were intended to be gratuitous, prompted by friendship, kindness and the relation existing between the parties, and were tendered or made without any expectation of remuneration or return, they cannot later be converted into a pecuniary demand. (*Newbert* v. *McCarthy*, 190 Cal. 723 [214 Pac. 442].) The evidence in this case, which is here before us in the reporter's transcript, presents a case wherein there is conflict and as to which reasonable minds may differ as to inferences and implications to be drawn therefrom. It cannot be said that the evidence does not support the finding. ■ It appears clear enough that from the evidence it may be inferred that respondent in making the advances and in expending his own money for support and care of his brother did so with expectation and intention of reimbursement to the extent of his brother's assets or income. The evidence shows that during the period prior to his appointment he did in fact apply the credit of $1200 on dissolution of the corporation in which the brother held stock, and that he received and credited himself with some insurance health payments. The intention of reimbursement being thus present and partially executed in respect to the then known property and assets of the brother, it would with equal force and similar effect, attach to any subsequently discovered or acquired assets or property, such as appeared later in the form of veterans compensation from the government. ■ This court might, if free to do so, decide to the contrary on the evidence herein; but where two or more inferences may reasonably be deduced from a certain state of facts or circumstances, a reviewing court is not permitted to substitute its deductions for those of the trial court. (*Wilbur* v. *Wilbur*, 197 Cal. 1 [239 Pac. 332].) The finding being based on reasonable inferences from the evidence, we are bound thereby and may not disturb it.

■ The next two questions are so interdependent that the answer to one will determine the answer to the other, and we shall therefore consider them together. For if the items for which reimbursement is sought and which have been allowed represent the advances made and expenses

paid for the use of the beneficiary by respondent as his guardian *de facto,* and are of such character as would warrant their allowance had they arisen during a guardianship *de jure,* then they could not be said to constitute the claim of a creditor. For by section 1502 of the Probate Code it is provided that when a guardian has advanced for the suitable support, maintenance or education of his ward an amount not disproportionate to the value of the ward's estate or his condition of life, and the same is made to appear to the satisfaction of the court by proper vouchers and proofs, the guardian must be allowed credit therefor in his settlement.

The probate court found that respondent acted as "guardian *de facto* or as trustee" of his brother from 1918 to the time of acquiring his *de jure* status in 1929. An examination of the transcript of the evidence taken reveals substantial evidence to support this finding; hence under the well-known rule this court will not substitute another or different one. As *quasi* guardian or guardian *de facto* acting with *bona fides,* one is entitled to reasonable and proper credits for maintenance of the beneficiary and for expenditures incurred on his account. Such a guardian is a trustee of the beneficiary's estate, and the accounting must be deemed in the nature of an accounting in equity, where it is presented in the probate court subsequent to the inception of the *de jure* status, and must be determined on equitable principles the same as in an action in equity for an accounting by such trustee. The criterion for determining whether a past maintenance should be allowed is whether a chancery court would have authorized it in advance. (*In re Beisel,* 110 Cal. 267 [40 Pac. 961, 42 Pac. 819]; *Estate of Schluter,* 209 Cal. 286 [286 Pac. 1008]; *Estates of Boyes,* 151 Cal. 143 [90 Pac. 454]; *Estate of Clanton,* 171 Cal. 381 [153 Pac. 459].) A guardian *de facto* is subject to all the duties and liabilities of a guardian. (*In re Smith's Appeal,* 158 Mich. 174 [122 N. W. 564].) The probate court having once found that respondent was guardian *de facto,* would, on natural and logical sequence, conclude that respondent's claim of reimbursement for past expense and maintenance was not the claim of a creditor but was allowance or credit sought in an accounting pre-

sented in regular course by him as subsequent guardian *de jure*; in which accounting, on equitable principles, he should be allowed for all proper disbursements for the benefit of the ward. (*In re Beisel, supra; Kelly* v. *Kelly,* 89 Mont. 229 [297 Pac. 470].)

The contention of appellant that it was error to allow respondent for expenditures in excess of the amount received by him for his ward when later claimed as reimbursement in his accounting does not present a question of law. The question of amount and necessity or propriety of advancements is one of fact for the probate court to determine on proofs before it, and if the amount so advanced is found to be not disproportionate to the value of the ward's estate *or his condition of life,* it should be allowed. (Sec. 1502, Probate Code.) The court below by implication found that the amounts allowed were proper under this rule of law, and such finding will not be here disturbed.

Some considerable stress is laid by appellant on the claim that moneys received from the veterans' administration for the incompetent herein are exempt from the claim of reimbursement under the World War Veterans Act. Section 22 of that act provides that "The compensation, insurance and maintenance and support allowance payable . . . shall not be subject to the claims of creditors of any person to whom an award is made." A claim of a *de facto* guardian for expenditures on behalf of the ward, set up in his subsequent accounting, is not the claim of a creditor. It is a charge arising during administration of the ward's affairs and estate, the same as if under a *de jure* guardianship. Without a previous *de jure* guardianship, advances made or claims created may not be paid out of funds derived from the veterans' administration. Those properly made by a guardian *de jure* in course of his administration may not be paid from that source because the funds are only exempted from claims of creditors of the beneficiary soldier. (*Estate of Ferarazza,* 219 Cal. 668 [28 Pac. (2d) 670].)

We find no error in the proceedings in the probate court; nor do we find anything therein that would operate to the detriment or prejudice of the incompetent. Over the long period of his disability he has been faithfully cared for and supported by respondent, and the order appealed from

operates only to do justice between the ward and his guardian, at the same time insuring proper care and maintenance of the ward out of his soldier's allowance.

The order is affirmed.

Stephens, P. J., and Desmond, J., concurred.