[Civ. No. 12378.   First Dist., Div. One.   Oct. 2, 1943.]

DORIS G. CROCKER et al., Appellants, v. CROCKER FIRST NATIONAL BANK OF SAN FRANCISCO (a Corporation) et al., Defendants; A. B. BIANCHI et al., Respondents.

Henry F. Boyen and Frank J. Fontes for Appellants.

A. B. Bianchi and Augustin Donovan in pro. per., and Franklyn M. O'Brien for Respondents.

KNIGHT, J.—Plaintiffs brought this action as beneficiaries of a trust fund, to enjoin the defendant bank, as trustee of said fund, from paying any of the trust funds for attorneys' fees and to compel all claimants against the trust fund to set

forth their claims and have them adjudicated. The defendants Bianchi and Donovan filed a cross-complaint alleging that the bank had employed them to perform certain legal services in connection with said trust fund, that they had performed such services and that the reasonable value thereof was $6,000. Judgment was entered in their favor on the cross-complaint for $5,000, and it was ordered therein that said sum was to be paid by the trustee bank out of the trust fund. From said judgment the plaintiffs alone appeal.

The legal services for which respondents claimed compensation in their cross-complaint were performed under the following circumstances: In 1924 J. J. Mahony, then the husband of plaintiff Doris G. Crocker and the father of plaintiff Marjorie Catherine Mahony, took out two life insurance policies in the principal sum of $25,000 each, and each provided for a waiver of premium and benefits of $250 a month in case of total permanent disability. One policy was written by the Equitable Life Assurance Society, and the other by the Aetna Life Insurance Company. In 1925 Mahony became "totally disabled" and disability benefits were paid by both companies without litigation up to 1935. Meanwhile and in 1930 Mahony executed a declaration of trust to the defendant bank and caused the policies to be delivered to the bank, and caused the bank to be named as death beneficiary of the policies. In 1932 he executed another trust indenture to the same trustee bank of the disability benefits under said policies, with power to collect the same, and naming the trustor and the plaintiffs herein as beneficiaries of the trust with provision for the payment by said trustee monthly of half of said disability benefits to the trustor and half to plaintiffs. Article VI of the trust indenture provided in part: "The trustee may institute any proceeding at law or in equity in order to enforce the payment of moneys due and payable on account of the said disability payments provided by the aforesaid policies, and may do and perform any and all other acts and things which may be necessary for the purpose of collecting any of said moneys which may be due and payable under the terms of said policies. . . ." Prior to the execution of the 1932 trust indenture the trustor and plaintiff Doris G. Crocker were divorced, and each has since remarried.

Under the terms of the policies the insurance companies are entitled to require proof of continued disability periodically, as often as once a year at their option, or to terminate liability at any time if the insured is able to engage in a gainful occupation. In 1935 the Equitable Life Assurance

Society required the insured to furnish proof of continued disability; and an action was brought in the name of the trustee, represented by attorneys Keith and Creede, to recover accrued installments. Judgment was entered in favor of the trustee, and payment of the benefits continued until 1940. Early in that year both of the insurance companies ceased and refused to continue to make the disability payments, each claiming that the insured was no longer totally and permanently disabled, and each threatened that unless the payment of premiums was resumed forthwith it would lapse the policy. The trustee having then no funds available in the trust, refused to advance money for premiums or costs of suit, and with the consent of the trustor employed respondents to commence and prosecute an action to establish the obligations of said companies to pay the disability benefits, to collect all disability benefits allegedly accrued under the policies, to secure the waiver of future premiums and the return of such sums as had been paid to said companies for premiums during the time the disability was claimed to have existed, and generally to conserve and protect each of said policies from lapse or default. The terms of the oral understanding relating to said employment, as found by the court, were that in the event no recovery was effected by respondents, they would take nothing for their services, advancements or costs and disbursements; that in such event all services rendered and amounts disbursed should be at their own risk; but in the event of recovery in said actions or in the event of any final adjudication of the total disability of Mahony, the agreement with respondents was that the disbursements made by them and the compensation for their services would be made out of the trust funds; ''that in the event of recovery and the final adjudication of such total disability, such disbursements would be repaid, together with compensation for the services rendered, as was reasonable in the premises, taking into consideration that such payment for services was contingent as aforesaid.'' The trial court further found that respondents filed and prosecuted an action against each of the insurance companies, ''obtained a final judgment establishing the total and permanent disability of the life owner, Jeremiah J. Mahony, and in the interim successfully arranged to save each of said policies from forfeiture or lapse by the payment by said attorneys of certain premiums; by reason of all whereof, on or about the last week of December, 1941, an immediate recovery was effected

in cash for accrued disability benefits and return premiums in an amount approximately upwards of Twelve Thousand Dollars ($12,000.00) ''; ''That in addition to said moneys, the said cross-complainants [respondents], by judgment and stipulations, further established an obligation on the part of each of said insurance companies to pay into the said fund and to the said defendant trustee, on January 3, 1942, each an additional sum of Two Hundred and Fifty Dollars ($250.00) and monthly thereafter a similar sum during the existence of said disability and the life of Jeremiah J. Mahony and the waiver of premiums during said time; that said Jeremiah J. Mahony was approximately fifty-one years of age and that his expectancy is approximately twenty years; that in the light of such contingencies, the services rendered by cross-defendants [cross-complainants], as aforesaid, established a contingent obligation of a value in excess of One Hundred Thousand Dollars ($100,000.00); That in connection with the services rendered by cross-complainants, as aforesaid, they expended and disbursed a sum in excess of One Thousand Dollars ($1,000.00).'' The court further found that such services were of the reasonable value of $5,000, and judgment was entered as stated for that amount.

Appellants first contend that there is no evidence to support the trial court's finding that respondents had obtained a final judgment establishing the total and permanent disability of Mahony. In this regard they argue that all that was obtained was a judgment for $1,500 against the Equitable, but this judgment did not purport to adjudicate any future liability; in other words, that it established the liability of the companies up to the date of the judgment, but did not establish any future liability, and therefore the insurance companies may at any future time again contest the disability status of the insured; consequently there was no ''final judgment establishing the total and permanent disability'' of the insured, which was the condition precedent to recovery by respondents. There is no merit in the point. In view of the provisions of the policies that the insurance companies could challenge the disability status of the insured as often as once a year, it was obviously impossible ever to obtain a judgment of permanent disability which would prohibit the companies from afterwards challenging that status; and it would seem only reasonable, therefore, that the phrase ''total and permanent disability'' as used in the findings, in the contract of employment, and as understood by the parties thereto,

must mean "total and permanent disability" as defined in the policies. Respondents did obtain a final judgment against the Equitable in the sum of $1,500 based upon the 1941 "total and permanent disability" of the insured, and by stipulation arrived at a similar result in connection with the Aetna policy; furthermore, they collected all moneys due by reason of such disposition to January 3, 1942.

Appellants contend that the amount allowed as attorneys' fees is entirely unwarranted by the services actually rendered; that the recovery of "upwards of $12,000" was merely a reimbursement of payments of accrued and accruing disability benefits by the insurers in compliance with the obligations of the policy. The evidence disclosed by the record is amply sufficient, however, to support the conclusion that it was because of the litigation instituted and carried on by respondents and the legal services performed by them in connection therewith for the enforcement of the obligations of the policies that the $12,000 was paid. Furthermore, all of the witnesses testified as to the value of the services being in excess of the amount awarded, and appellants introduced no evidence upon the question. Upon an award of fees "an appellate court will not set aside the findings of the trial court or reverse the judgment rendered thereon if they are at all supported by the evidence"; and "where the trial court has fixed the compensation of an attorney upon the consideration of the evidence and its own judgment, the appellate court will not interfere unless a plain and palpable abuse of its discretion has occurred." (*Mayock* v. *Splane,* 56 Cal. App.2d 563, 573 [132 P.2d 827], quoting from 3 Cal.Jur. 718.)

Appellants urge also that the trial court erred in refusing to postpone the trial of the present action to await final determination of an action then pending involving the question of the validity of the trust indenture; but this point has now become moot for the reason that the validity of the indenture has since been sustained and the decision so holding has become final. (*Mahony* v. *Crocker,* 58 Cal.App.2d 196 [136 P.2d 810].)

By way of an amended and supplemental complaint appellants brought in two additional claimants, namely, the law firm of Chickering and Gregory, and the trustee bank, each of whom asserted a claim for compensation for services rendered in connection with the administration of the trust fund, but the court declined to pass upon the merits of their claims in this action, and the court's ruling is assigned as

error. The contentions made in this behalf are without merit. In this respect the trial court found on evidence legally sufficient to support the finding that such claims were prematurely urged; that such services were in no way duplications but were separate from and in addition to the services rendered by respondents herein; that the services rendered by said claimants were unrelated to the establishment and collection of the disability benefits, but were rendered in connection with the administration of the trust and in the action brought by the insured involving the validity of the trust indenture, and which had not then been finally determined. The court then went on to hold that the claims of the law firm and the bank trustee should be denied without prejudice and held in abeyance until the final determination of that action and until the further order of the court, and that the determination and payment thereof should be restrained in the interim. The only complaint made by appellants with reference to the refusal of the trial court herein to pass upon the merits of those claims is that appellants will be put to the annoyance and expense of later litigation in connection therewith. But the claimants themselves are not complaining, and it is apparent that the proper time for the adjudication of those claims is after the litigation in which the services were rendered is finally terminated.

The judgment herein was entered on July 2, 1942, and provided for the payment of interest at 7 per cent on the fee of $5,000, as allowed by the trial court, from January 1, 1942. The rule is, however, that in an action to recover the reasonable value of services rendered, the amount, character and value of which can be established only by evidence in court, or by an accord between the parties, and which are not susceptible of ascertainment either by computation or by reference to market rates, the plaintiff is not entitled to interest prior to the verdict or judgment. (*Shellenberger* v. *Baker,* 101 Cal.App. 615 [281 P. 1102] ; *Gray* v. *Bekins,* 186 Cal. 389 [199 P. 767] ; *Swinnerton* v. *Argonaut L. & D. Co.,* 112 Cal. 375 [44 P. 719].) Here the cross-complaint was for the recovery of the reasonable value of services performed, which respondents alleged were reasonably worth $6,000, and the trial court after hearing the evidence allowed $5,000. It is apparent, therefore, that respondents were not entitled to interest thereon prior to the entry of judgment. Respondents contend that on December 31, 1941, there was an accord

between them and the trustee bank, but there is no finding to that effect, nor in our opinion would the evidence justify such a finding.

In accordance with the views above expressed, the judgment is modified by striking therefrom the provision allowing interest prior to the entry of judgment, and as thus modified the judgment is affirmed, the respondents to recover costs.

Peters, P. J., and Ward, J., concurred.

A petition for a rehearing was denied November 1, 1943, and appellants' petition for a hearing by the Supreme Court was denied November 29, 1943.