[L. A. No. 19527. In Bank. June 24, 1947.]

Guardianship of the Person and Estate of PATRICIA LEE JACOBSON, a Minor. E. MAE McCALLOM, Respondent, v. PATRICIA LEE HORNADAY et al., Appellants.

Baldwin Robertson and Earl Redwine for Appellants.

George R. Maury, S. L. Kurland and Alfred C. Ackerson for Respondent.

SHENK, J.—Patricia Lee Leach, as an emancipated married woman, and also by Baldwin Robertson, her guardian *ad litem,* and by Harold C. Morton, her special guardian, and Harold C. Morton, as special guardian, appeal from a minute order of April 2, 1945, and from a written order of May 4, 1945, approving and settling the first and final account of E. Mae McCallom and granting the petition of E. Mae McCallom, former special guardian herein, for counsel fees and expenses.

The order for allowance of counsel fees is not itself appealable, but the item may be reviewed on appeal from the order settling the first and final account of the former special guardian. (*Guardianship of Leach,* 29 Cal.2d 535 [176 P.2d 369].)

The proceedings in which three attorneys rendered services are described chronologically in the opinion in prior consoli-

dated appeals (*Guardianship of William Ronald Leach*, L. A. No. 19230; *Guardianship of Patricia Lee Jacobson*, L. A. No. 19231, *ante*, p. 297 [182 P.2d 529]) this day filed. Reference is made to that opinion for a more extended factual background. This court there affirmed judgments entered in December, 1944, removing F. Paul Hornaday as guardian of the persons and estates of the two wards. By stipulation the evidence in that proceeding is deemed to be evidence in the present proceeding.

Following the entry of the judgments of removal and during the pendency of appeals therefrom, and on January 23, 1945, E. Mae McCallom, as special guardian of the estate of Patricia, and as guardian *ad litem* and special guardian of the person and estate of William Ronald, petitioned the trial court for an allowance of $94,706 counsel fees and $884.51 expenses, chargeable one-half, or $47,795.25 to each estate. Attached to the petition was a summary of the hours and days spent in court and out of court by each counsel in working on these matters. On February 8, 1945, Mrs. McCallom filed in the estate of Patricia her first and final account as special guardian, wherein she sought the sum of $47,795.25 as an item of expenditure for counsel fees and expenses. On March 30th she filed a supplemental petition for an additional allowance of counsel fees and expenses covering the period subsequent to the filing of the original petition on January 23d.

The matter was called for hearing before Judge Joseph W. Vickers, who had heard the removal proceedings, *ante* p. 297 [182 P.2d 529] L. A. No. 19230, L. A. No. 19231, *supra*. Patricia promptly filed a statement of disqualification charging bias and prejudice on the part of Judge Vickers toward her, her husband, and her former guardian, as evidenced by his rulings in the removal proceedings and by several remarks made by him in open court. A verified answer was filed on behalf of Judge Vickers denying disqualification, bias, or prejudice, and denying that he held any convictions regarding the subjects in litigation except those arrived at upon the basis of the evidence presented before him. It was stipulated that the disqualification matter might be heard and determined by Judge Dudley S. Valentine. On March 9th Judge Valentine decided that Judge Vickers was not disqualified and denied the disqualification petition. Patricia, *sui juris* and by her guardian *ad litem*, has assigned this

ruling as error. She urges the point on this appeal under a bill of exceptions which has been incorporated in the clerk's transcript. During the course of the hearing she also applied to the District Court of Appeal for a writ of prohibition. On March 28th the application was denied (*Hornaday* v. *Superior Court*, 2 Civ. 14928, 68 A.C.A. No. 6, Minutes, p. 3).

The contentions with respect to disqualification urged by reason of alleged errors in the rulings of Judge Vickers in the prior removal proceedings are answered first by the fact that mere erroneous rulings in prior guardianship proceedings in which counsel rendered the services for which compensation is claimed would not create a disqualification as a matter of law (*McEwen* v. *Occidental Life Ins. Co.*, 172 Cal. 6, 11 [155 P. 86], and cases there cited; 14 Cal.Jur. pp. 821-823, § 23); and second by the fact that this court's affirmance of the judgments of removal rendered by Judge Vickers has established the position of counsel on the prevailing side in the litigation, thus refuting any claim that their services were of no value. The charge that Judge Vickers erroneously declared that Patricia's marriage was invalid relates to an issue upon which there was a finding but not an adjudication in the removal proceedings (*Guardianship of Leach, supra, ante*, p. 297, L. A. No. 19231), and the finding affords no basis for the charge of disqualification.

If, as charged in the disqualification statement, some of the services for which an allowance of fees was sought could not properly be paid from the estate of Patricia, that was a matter pertaining to the issue to be heard, i. e., the amount of the allowance, and not a matter pertaining to the qualification of the judge. The same is true with respect to the alleged over-valuation of the services. A trial judge who has sanctioned the rendition of legal services in a guardianship proceeding and has observed the performance of counsel is ordinarily better qualified than any other to adjudge the worth of those services. (*Estate of Hardenberg*, 18 Cal.App.2d 307, 310 [63 P.2d 1200]; *Estate of Keith*, 16 Cal.App.2d 67, 70 [60 P.2d 171]; *Guardianship of Vaughan*, 14 Cal.App.2d 594 [58 P.2d 742].)

The challenged remarks by Judge Vickers in open court were but statements in line with the convictions and conclusions drawn by him from the conflicting evidence in the removal proceedings, as reflected in his determination of those proceedings. Such expressions of opinion uttered by

a judge in what he conceives to be the discharge of his judicial duty, are not evidence of bias or prejudice. (*Kreling* v. *Superior Court,* 25 Cal.2d 305, 311-312 [153 P.2d 734]; *McEwen* v. *Occidental Life Ins. Co., supra,* 172 Cal. at p. 11.) Furthermore, so far as Patricia herself is concerned the remarks indicate an anxiety for her welfare rather than any prejudice against her.

The issue of disqualification was submitted to Judge Valentine upon conflicting affidavits and there is no showing that he abused his discretion in resolving the conflict in favor of qualification.

After the determination of the disqualification issue, the petition for allowance of fees and expenses and for settlement of the account of Mrs. McCallom came on for hearing. On April 2, 1945, a minute order was entered approving the account and allowing, in the guardianship of William Ronald $27,500 fees and $376 expenses, and, in the guardianship of Patricia, $32,500 fees and $508.51 expenses; also allowing, on the supplemental petition, an additional $1,000 fee in each estate. Thus, the total allowance in the estate of Patricia was $34,008.51. On May 4, 1945, in the estate of Patricia, formal findings were filed with an order allowing Mrs. McCallom $34,008.51 for counsel fees and costs, directing payment by special guardian Morton, granting a lien for that sum upon all the assets of the estate, and providing for interest at 7 per cent until payment. On the same day a further written order was made approving and settling the first and final account of Mrs. McCallom, with the fee and expense item fixed at $34,008.51, and discharging her as special guardian. She sought no allowance for her own services.

On this appeal no item of the account is challenged except the allowance for counsel fees. The day and hour summary of work submitted by the three attorneys covered the service performed by them for both estates. Mrs. McCallom petitioned, as aforesaid, for a lump sum to cover services rendered over the entire period in behalf of both wards. No effort was made by counsel or court to undertake the almost impossible task of making a separate time and period segregation as to each estate.

As shown by the minute order of April 2d, however, the court taxed the estate of William Ronald with a much less sum than that of Patricia. The work in court started earlier in the estate of William Ronald than in the estate of Patricia

but the problems raised in the latter estate involved complex factual elements and legal questions not presented in the former. But notwithstanding this, the work done was in a sense one work. The estates consisted almost entirely of a single asset, the Leach company, and any misconduct in the guarding of that asset would affect both wards. Evidence with reference to the grounds of removal adduced in behalf of one estate was also evidence which would strengthen the grounds for removal asserted in the other estate. Court and counsel were not at fault in proceeding on the theory that a single evaluation apportioned between the two estates was within the court's discretion. The record in the consolidated removal proceedings shows that whatever work was done in the estate of William Ronald redounded to the benefit of the estate of Patricia and vice versa.

It is argued that since there was no obligation on the part of Patricia to pay any portion of the fees and expenses incurred in the estate of William Ronald and since neither Mrs. McCallom nor her attorneys purported to represent Patricia in any capacity prior to July 10, 1944, no allowance against Patricia could properly be made for services rendered before that date; that no allowance could properly be made for the period July 10th to November 14th because during that period the attorneys were representing Mrs. McCallom solely in her capacity as grandmother (from September 6th Patricia was represented by a guardian *ad litem* of her own choosing, and from October 9th she was *sui juris* by reason of her marriage); that Mrs. McCallom was not made special guardian until November 14th, at which time Patricia's emancipation had effected a removal of the general guardian by operation of law. In short, under this argument, no allowance at all could properly be made from the estate of Patricia.

The court, however, did not err in making an allowance. At the time the services were undertaken, Patricia's parents were dead, her general guardian Hornaday was under removal charges filed in the estate of William Ronald, and the guardian *ad litem* of her own choosing was the brother-in-law of Hornaday's associate. The grandmother, Mrs. McCallom, alone stood in a position adverse to Hornaday. Although she was not the nominee of Patricia (Prob. Code, § 1406), her relationship and her activity in the estate of William Ronald made her a person upon whom the court might rely

in its efforts to protect the interests of both wards. She was permitted to petition in the estate of Patricia on July 10th for removal of Hornaday. Upon the basis of that petition, after Patricia's refusal to consent thereto, and upon other information before it, the court of its own motion issued a citation to Hornaday to show cause why he should not be removed as guardian of the person and estate of Patricia. The attorneys for Mrs. McCallom cooperated with and aided the court in its undertaking. There was no understanding that either their services or those of Mrs. McCallom would be rendered gratuitously. They acted upon the assumption that insofar as their services proved beneficial to the estate they would be paid for. That the court had power to employ such a procedure in its effort to guard the interest of the minors is nowhere denied. The duties assumed by Mrs. McCallom were those of a constructive, de facto, or quasi-guardian, entitling her to an allowance for all proper disbursements for the benefit of the ward, including counsel fees. (*In re Beisel*, 110 Cal. 267 [40 P. 961, 42 P. 819]; *Guardianship of Giambastiani*, 1 Cal.App.2d 639 [37 P.2d 142].) She was entitled to seek an allowance at any time. The fact that she did so while the appeal from the removal judgments was still pending is immaterial. The trial court correctly computed its award upon the assumption that its adjudications were proper and would become final. Had they been reversed on appeal, that fact would have affected only the question whether the allowance was excessive.

The work which was of benefit to the estate of Patricia included that which was done prior to court appearance on July 10th and also that performed subsequent to the rendition of the judgments of removal in seeing that a sale of the company was duly consummated. The allowance properly covered the entire period (*Guardianship of Giambastiani, supra,* 1 Cal.App.2d at pp. 645-6), including attorneys' fees and expenses incurred in settling the account of the guardian such as those claimed in the supplemental petition herein (*Estate of Clanton,* 171 Cal. 381, 387 [153 P. 459]).

It is contended that the court was without jurisdiction on November 15, 1944, to appoint Mrs. McCallom special guardian, since Patricia did not consent to the appointment and she had theretofore attained her majority by marriage. Section 1406 of the Probate Code permits a minor over fourteen years of age to nominate his own general

guardian but no mention is made of the nomination of a special guardian and the consent of the minor is not necessary to such an appointment by the court. ▆ Upon the removal of a general guardian, he stands suspended from office during the pendency of his appeal from the order of removal, but a new general guardian may not be appointed until the order of removal becomes final (*Guardianship of Van Loan*, 142 Cal. 429 [76 P. 39]; *In re Moore*, 86 Cal. 72 [24 P. 846]). ▆ If, during the period of suspension there is need for a guardian, it is within the power of the court to appoint a special guardian, regardless of the minor's consent or nonconsent, or to take any other steps necessary for the protection and best interests of the guardianship estate. Patricia's nominee, special guardian Morton, in his response to the McCallom petition, stated his recognition of the necessity of passing upon the petition and his consent "that the court may hear and consider the same, and further requests that the fees and expenses to be allowed, if any, be only such as are permitted and allowable under the laws of the State of California."

▆ The fact that on October 9th Patricia had purportedly married did not affect the jurisdiction of the court to take all proper steps necessary to the completion of the guardianship, including the appointment of the grandmother as special guardian on November 15th. At the time of the appointment and of the hearing and settlement of the grandmother's account there had been no order terminating the guardianship. In fact the termination proceeding had been left pending at the close of the removal proceedings. In the removal proceedings Patricia failed to establish the validity of her marriage to the satisfaction of the court and was confronted with a finding, although not an adjudication, of invalidity.

▆ In this proceeding Patricia offered in evidence a certificate of her marriage and of the prior divorce proceedings of her husband and his former wife, but the offer was properly rejected for the reason that the validity of the marriage was not an issue raised by or pertinent to the petition for counsel fees and expenses. The eventual adjudication of the marriage was not vital to the determination of either the removal proceedings (*Guardianship of Leach, supra*, L. A. No. 19230, L. A. No. 19231, *ante*, p. 297 [182

P.2d 529] ) or the counsel fees proceeding. If the marriage was valid, Hornaday was nevertheless chargeable with failing to properly guard the minor from possible adverse influences, and the showing made by the grandmother was sufficient to support the action of the court in entertaining her petition and seeking the aid of her counsel in investigating and prosecuting the issue for protection of the minor. If the marriage was invalid, the result would be the same so far as the work of the attorneys and the grandmother is concerned.

Even assuming that on a hearing of the petition to terminate, Patricia could establish the validity of the marriage, the court nevertheless retained full jurisdiction of the guardianship in the interim. A lawful marriage contracted by a female over the age of eighteen years terminates her minority and the guardianship of her person and estate (Civ. Code, § 25; Prob. Code, §§ 1500, 1590), but the lawfulness of the marriage must be shown. Where, as here, the marriage is under attack, the jurisdiction of the court and the guardianship continues for all purposes until the validity of the marriage is established. Were the rule otherwise, any ward, by entering upon a purported marriage could effectually tie the hands of the court and of the guardian and thwart the very purpose of the guardianship. The present case, where the ward resisted every effort made by the court in her behalf, illustrates the point.

Moreover, the guardian who serves during the interim between legal termination of the guardianship by attainment of majority through marriage, and proof of the marriage, and final discharge of the guardian, will be allowed the reasonable expenses incurred in the execution of his trust (Prob. Code, § 1556). According to the Code Commissioner's note the amendment to the predecessor of this statute in 1907 was enacted with intent to establish the rule set out in the dissenting opinion in *Estate of Kincaid* (1898), 120 Cal. 203, 211 [52 P. 492]. It is there said: "If, then, it appears that the relation of guardian and ward has continued in fact after the termination of the strictly legal relation, the account of the guardian should embrace all the transactions, as well after as before the majority; and any court, whether probate or other, settling the account must settle it as a whole, and upon the same principles after as during the minority. And in such settlement transactions fairly referable to the *de facto* relationship of guardian and ward should be treated as such and not as transactions between strangers.''

So far as the rendition of services and other matters connected with the sale of the company are concerned, these matters not being essential to an accounting by Mrs. McCallom, Patricia is in no position to complain for the reason that she consented to the sale. She claims it was not a true consent as she wanted to keep the company, and that she merely acquiesced in the sale because she feared the results of the McCallom guardianship. However, even the removed guardian Hornaday had agreed that a sale of the company would probably be in the best interests of both minors and this view was never seriously challenged. Any mental reservations Patricia may have had in giving her consent are immaterial. The sale was duly consummated and the guardian is entitled to reimbursement for her expenditures in the premises.

It is contended that the court committed prejudicial error in failing to find on all material issues. The findings covered only the issue of the reasonableness of the allowance made. No findings were made bearing on other matters herein discussed, such as the validity of Patricia's marriage, her expressed wishes and authorizations, and the like. These matters relate largely to issues in the removal proceedings or to the termination proceeding or to questions upon which no finding was required. No prejudice is shown.

It is contended that the amount allowed by the court for counsel fees, $32,500, with $1,000 for supplemental services and $508.51 costs, a total of $34,008.51, is so excessive as to constitute an abuse of discretion. The cost item is not challenged. The propriety of the supplemental award has already been the subject of comment. There remains only the $32,500 item. This item, and the companion award of $27,500 in the estate of William Ronald, make a total allowance of $60,000, as against the prayer of the petition for $94,706. In other words, Mrs. McCallom was allowed but about two-thirds of the sum which she requested for fees.

Expert witnesses testified to the value of the services rendered. A forty-page hypothetical question was propounded to them. Numerous objections were interposed on the ground that the question erroneously assumed the existence of certain facts. Many of these were facts found to be true in the removal proceedings. A particular objection was that the question erroneously assumed that Mrs. McCallom and her attorneys had "saved" the minors' inheritance

and recovered $610,000 for them. The trial court overruled the objections and the ruling is assigned as error. No prejudicial error, however, is shown. It is not essential to the propriety of a hypothetical question that the facts assumed should be undisputed. The question is proper if it recites only facts within the possible or probable range of the evidence and if it is not unfair or misleading. A large discretion relating to the form of the question rests with the trial court. (*Treadwell* v. *Nickel*, 194 Cal. 243, 264 [228 P. 25]; *People* v. *Hill*, 116 Cal. 562, 567 [48 P. 711]; 10 Cal. Jur. § 223, pp. 966, 967.) The in-court and out-of-court day and hourly rate at which the attorneys valued their services, as stated in the question, was in line with their testimony on the subject, and there was also expert opinion to the effect that the rate specified was reasonable. Moreover, the value of the services was not itemized on this basis. Only a lump sum was sought, based upon the reasonable value of the services under the circumstances shown.

 It is contended that the award was so excessive as to constitute an abuse of discretion and that it was the result of prejudice on the part of the trial judge. The evidence, however, refutes this contention. The petitioner valued the services at $94,706, or $47,353 in each estate. One of the expert witnesses, and all of them were qualified, placed the reasonable worth of the services in both estates at $98,000 to $100,000. This witness testified that after the hypothetical question was submitted to him he had augmented his information by reading most of the transcript, all of the pleadings, and most of the briefs. Another witness stated that $90,000 would be a fair and reasonable fee. Another gave a figure of $100,000 to $125,000. One of the witnesses gave his opinion that a reasonable fee would approximate an amount based upon the day and hour charge testified to by the attorneys, with an additional fee of five to ten per cent because of the contingent element involved in recovery, or, to compute the fee another way, "I think somewhere between 15 and 16 per cent of the amount recovered or saved would not be an unreasonable charge if you want to figure it on a percentage basis. I think if it was ordinary litigation where an estate was not involved and the economic feature was not a problem, I think if it was an ordinary individual and the person was taking it on a contingent basis, they would not hesitate to charge 20 to 25 per cent."

The allowance made by the trial court was considerably less than the figure suggested by the majority of the experts. It was about ten per cent of the gross estate involved, or about fifteen per cent of the net. It was properly based upon the court's conclusion, drawn from the conflicting evidence, that the services had been of great value to the minors. The allowance of counsel fees in a matter such as this rests largely in the discretion of the court in the first instance and the order under review will not be disturbed unless an abuse of discretion is plainly involved. (*Estate of Duffill,* 188 Cal. 536, 553, 554 [206 P. 42] ; *Estate of Parker,* 186 Cal. 671, 672 [200 P. 620] ; *Freese* v. *Pennie,* 110 Cal. 467, 470 [42 P. 978] ; *Crocker* v. *Crocker First Nat. Bank,* 60 Cal.App.2d 725, 730 [141 P.2d 482] ; *County of Riverside* v. *Brown,* and cases cited, 30 Cal.App.2d 747, 749, 750 [87 P.2d 60] ; *Guardianship of Garbini,* 28 Cal.App.2d 715 [83 P.2d 508] ; *Estate of Keith, supra,* 16 Cal.App.2d at p. 70; 11B Cal.Jur. § 1056, p. 506; 3 Cal.Jur. § 96, 114, pp. 697-698, 718.)

The trial court did not err in granting the guardian a lien upon the assets of the guardianship estate to secure payment of the fee and cost allowance (*Estate of Schluter,* 209 Cal. 286 [286 P. 1008] ; *Estate of Clanton, supra,* 171 Cal. at p. 385), or in providing for interest from date of the allowance order (*Glenn* v. *Rice,* 174 Cal. 269, 276 [162 P. 1020] ; *Crane* v. *Stansbury,* 173 Cal. 631 [161 P. 7] ; *Crocker* v. *Crocker First Nat. Bank, supra,* 60 Cal.App.2d at p. 731; 14 Cal.Jur. § 48, p. 945).

A petition on behalf of Patricia for augmentation of the record and for her substitution, *sui juris,* as party appellant was filed in this court, but a letter was later received stating that counsel was not greatly concerned whether the request be granted or denied. The proffered data would not affect the determination of this appeal.

The petition for augmentation of record and for substitution of party appellant is denied. The appeal from the order allowing counsel fees is dismissed. The order approving and settling the first and final account of E. Mae McCallom is affirmed.

Gibson, C. J., Edmonds, J., Carter, J., Traynor, J., Schauer, J., and Spence, J., concurred.