[L. A. No. 3611.    Department Two.—January 31, 1916.]

## RACHEL A. McEWEN, Appellant, v. OCCIDENTAL LIFE INSURANCE COMPANY (a Corporation), Respondent.

New Trial—Transfer of Cause for Prejudice and Bias of Judge—Duty of Judge to Negative by Affidavit.—It is the duty of the trial judge, if he can do so, to negative by his affidavit, reciting his mental attitude, allegations of prejudice made in proceedings to obtain a transfer of the cause.

Id.—State of Mind of Judge—Disclaimer of Bias.—The state of mind of the judge in such an application is the matter in dispute, and it was therefore proper to refuse to strike out as conclusions those portions of the affidavit of the judge in which he disclaimed bias and prejudice.

Id.—Rulings of Judge as Indicating Prejudice.—The showing, in plaintiff's affidavit of prejudice, that the judge, after ruling against plaintiff, granted her motion for a new trial, and on the appeal this ruling on the motion was sustained, does not indicate bias or prejudice on the part of the judge, but, on the contrary, showed a desire on his part to do justice.

Id.—Rulings Indicating Fairness.—A showing that the judge generally decided against plaintiff on objections made by her counsel, but not asserting that the rulings were not generally correct, or that they had been reversed by the judge on his own motion, does not indicate prejudice, but, on the contrary, indicates a desire on the part of the judge to be fair.

Id.—Erroneous Rulings not Ground of Bias.—Erroneous rulings against a litigant, even when numerous and continuous, form no ground for a charge of bias or prejudice, especially when they are subject to review.

Id.—Expressions of Opinion as Evidence of Bias.—The expressions of opinion uttered by a judge, in what he conceives to be a discharge of his judicial duties, are not evidence of bias or prejudice.

Id.—Vexation of Judge and Remarks About Verdict as Evidence of Bias.—The vexation of the judge, and his remarks that he did not know how the jury could possibly reach such a verdict, indicates that he had formed an opinion regarding the legal questions presented in connection with the proof, and being based upon the observation of the witnesses, hearing their testimony, and his knowledge of the law applicable thereto, do not amount to that prejudice against a litigant which the statute contemplates as a basis for a change of venue.

Id.—Inconsistent Demeanor of Judge as Evidence of Bias.—An inconsistency between the demeanor of the judge at the time the ver-

dict was rendered, and that previous to the submission of the case to the jury when denying a motion for a directed verdict in favor of defendant, merely indicates that, upon more mature consideration of the case, after the refusal to direct a verdict for defendant, the judge deemed it to be his duty under his oath to grant a new trial and is not an indication of prejudice.

ID.—DENIAL OF MOTION FOR CHANGE OF VENUE.—In this case the showing of prejudice was slight, and was met so fully by the affidavit of the judge that there can be no doubt of the justice and propriety of his action in denying the motion of the plaintiff made under section 170 of the Code of Civil Procedure.

ID.—DISPLAY BY JUDGE OF ANNOYANCE AT VERDICT NOT GROUND FOR TRANSFER OF CAUSE.—A display by the judge of annoyance at what seemed to him to be misconception of the jury of the effect or weight of the evidence, and his suggestion that a motion for a new trial should be made upon the minutes of the court, is not that prejudice which the statute makes the basis of the removal of the cause to another court.

ID.—ACTION ON ACCIDENT INSURANCE POLICY—INSUFFICIENCY OF EVIDENCE TO SUPPORT VERDICT—SUFFICIENT SPECIFICATION.—A specification of the insufficiency of the evidence to support the verdict, reciting that there was no evidence tending to prove that the death of the decedent was not due to the concurrence of nephritis and rheumatism with the effect of a fall, if any, containing the language "but on the contrary, the evidence proves by an overwhelming preponderance, that if the said fall suffered by the said McEwen contributed in any manner or degree to the death of said McEwen, that it served merely to accelerate the progress of the diseases from which the said McEwen was then suffering, and the last stages of which were then approaching, to wit: nephritis and rheumatism, and at most, concurred with said disease in bringing about said death," sufficiently directed the attention of the court and the adverse party to the particular point on which the evidence was claimed to be insufficient, and complies with the requirements of section 659 of the Code of Civil Procedure.

ID.—SPECIFICATION SUFFICIENTLY DEFINITE.—A specification of insufficiency of the evidence to support a verdict, to the effect that there is no evidence tending to prove that deceased and plaintiff fulfilled the conditions of the policy, but that on the contrary decedent made a certain quoted warranty which was false, sufficiently shows defendant's theory, and the evidence which it was desired to call to the court's attention.

ID.—BURDEN OF PROOF—GROUND OF AWARDING NEW TRIAL ASSUMED ON FAILURE OF PROOF BY DEFENDANT.—The execution and delivery of the policy being admitted, the burden was upon the insurance company to show the falsity of statements of the insured by way of

warranty when the answer attacks the truth of such statements, and if the defendant company failed to establish such falsity, and no such proof was made, it must be assumed that the court granted the motion for a new trial for some other reason.

Iᴅ.—Dɪsᴄʀᴇᴛɪᴏɴ ᴏꜰ Tʀɪᴀʟ Cᴏᴜʀᴛ ɪɴ Gʀᴀɴᴛɪɴɢ Nᴇᴡ Tʀɪᴀʟ—Oʀᴅᴇʀ Cᴏɴ-ᴄʟᴜsɪᴠᴇ ɪꜰ Sᴜsᴛᴀɪɴᴇᴅ ᴏɴ Aɴʏ Gʀᴏᴜɴᴅ.—Unless there has been an abuse of discretion, the action of the lower court in granting a new trial is conclusive, and the order to that effect, in general terms, must be affirmed if it can be sustained upon any of the assigned grounds.

APPEAL from an order of the Superior Court of Los Angeles County granting a new trial, and from an order refusing to transfer the hearing of the motion for a new trial and the cause to another department, or to call in another judge, and from two orders refusing to strike out certain portions of certain affidavits.   J. P. Wood, Judge.

The facts are stated in the opinion of the court.

Murphy & Poplin, for Appellant.

J. W. McKinley, Benjamin E. Page, and A. W. Ashburn, Jr., for Respondent.

MELVIN, J.—Plaintiff, who is the widow of Charles R. McEwen, brought this action upon an accident insurance policy upon the theory that deceased met his death by reason of an accidental fall.   The defense was that the insured died, not as the result of accident, but of rheumatism and nephritis.   The verdict was in favor of the plaintiff.   Defendant moved for a new trial upon the minutes of the court.   The notice of intention to make the motion specifies insufficiency of the evidence to justify the verdict; that the verdict was against law; and errors of law occurring at the trial and excepted to.   The motion was granted.   Plaintiff appeals from the order granting the motion for a new trial, and also from an order denying her motion to transfer the motion for a new trial and the cause to another department, or to call in another judge.   There are also appeals from orders denying motions to strike out parts of the affidavit of the judge, and all of that of E. C. Thompson.

We will first consider the motion by which it was sought to disqualify the judge of the superior court to hear the motion

for a new trial. The affidavits of the plaintiff and her daughter alleged in substance that the case was tried origi- nally before the Hon. J. P. Wood in January, 1911, and that at the close of plaintiff's testimony, defendant's motion for a nonsuit was granted; that thereafter plaintiff made a mo- tion for a new trial and to set aside the judgment of nonsuit *which was granted;* that upon defendant's appeal this ruling was upheld by the district court of appeal (20 Cal. App. 477, [129 Pac. 598]); that after the first trial Mrs. McEwen believed Judge Wood to be prejudiced against her; that she so informed her attorneys and told them that she was willing to make an affidavit to that effect; that they persuaded her not to do so, and to allow the cause to remain in Judge Wood's department for trial without protest on her part; that when the verdict was returned and was read by the judge the fol- lowing occurred: ''That affiant was looking at the judge when he was reading the paper and saw the expression on his face; that she noticed that he changed color and appeared to be very angry and before the verdict was read aloud, he turned to one of the attorneys for the defendant and said, 'I will entertain a motion for new trial upon the minutes of the court at any convenient time. I do not see how the jury could possibly have reached this verdict.' And affiant fur- ther understood him to say, although he used a lower tone of voice, 'And I will grant a new trial,' but with relation to the last remark of the court, owing to the low voice which he used, she is not altogether certain that he made the remark, but she believes that he did.'' The affidavit of Mrs. McEwen also contained the following language:

''To further show that said judge is prejudiced and biased against her, affiant says that on the trial she noticed that gen- erally on any objections made by counsel for defendant, that said judge decided against plaintiff in nearly every important particular; that on the trial, among other things, he allowed former physicians of the deceased to testify to certain matters over the objection of plaintiff's counsel that the same was privileged, but that after the case was closed and just before reading the instructions, without any motion on the part of plaintiff's attorney, he struck out the said evidence as having been improperly allowed before the jury, but allowed the cer- tificate of death which was made by one of the physicians who attended deceased before his death to remain, and which

had been objected to by her counsel as privileged and hearsay.'' Judge Wood made and filed an affidavit denying any bias or prejudice against the plaintiff or her cause of action, and denying also that he had said as alleged in Mrs. McEwen's affidavit that he would grant defendant's motion for a new trial. He did say upon receipt of the verdict: ''I do not see how the jury could possibly have reached this verdict.'' Mr. Thompson, the official court reporter, made an affidavit regarding the proceedings on the motion for transfer of the cause under section 170 of the Code of Civil Procedure. It appeared from this affidavit, among other things, that the judge stated his belief that instead of letting the case go to the jury he should have directed a verdict in favor of the defendant.

The affidavit of the judge was entirely pertinent and the motion to strike out, as conclusions, those parts in which he disclaimed bias and prejudice was properly denied because his state of mind was the very matter in dispute, and he was in a better position to know his own feelings toward the plaintiff than anyone else. Besides, it was his duty, if he could do so, to negative the allegations of prejudice under oath in the form of an affidavit, reciting his mental attitude. (*Keating* v. *Keating*, 169 Cal. 754, 759, [147 Pac. 974].)

This affidavit was, in itself, sufficient to overcome the very meager showing made by the plaintiff in her effort to establish prejudice on the part of the judge. It makes little difference, therefore, whether Mr. Thompson's affidavit was, strictly speaking, admissible or not.

Plaintiff's affidavit shows that after ruling against her in the first trial Judge Wood granted her motion for a new trial; that an appeal was taken by her opponent; and that she prevailed over that opponent in the court of appeal. We fail to see how these facts indicated any bias or prejudice on the part of the judge. On the contrary, they evidenced a desire to do justice which caused the judge frankly to admit that his ruling in granting the nonsuit was incorrect. Next we find that the plaintiff feared she would not be fairly treated on the second trial; but her state of mind is not evidence. She complains that the judge generally decided against her on objections made by her counsel but she does not show, nor even assert, that such rulings were not generally justified. Three of the four rulings of which she makes specific com-

plaint seem to have been reversed by the court of its own motion. We refer to those by which the privileged communications made by deceased to three physicians were first admitted and then stricken out. Surely these things do not indicate prejudice. On the contrary, they exhibit a desire on the part of the court to be fair. Erroneous rulings against a litigant, even when numerous and continuous, form no ground for a charge of bias or prejudice, especially when they are subject to review (*Estudillo* v. *Security Loan etc. Co.*, 158 Cal. 66, [109 Pac. 884]; *Burke* v. *Mayall*, 10 Minn. 287; *State* v. *Bohan*, 19 Kan. 28; *Stahl* v. *Schwartz*, 67 Wash. 25, [120 Pac. 856]; *Bell* v. *Bell*, 18 Idaho, 636, [111 Pac. 1074]; *State* v. *Barnett*, 98 S. C. 422, [82 S. E. 795]). Nor are a judge's expressions of opinion, uttered in what he conceives to be the discharge of his judicial duty, evidence of bias or prejudice. (*State* v. *Bohan*, 19 Kan. 28; *State* v. *Crilly*, 69 Kan. 802, [77 Pac. 701]; *Ex parte N. K. Fairbank Co.*, 194 Fed. 978; *Epstein* v. *United States*, 196 Fed. 354, [116 C. C. A. 174].)

The vexation of the judge, and his remark that he did not know how the jury could possibly have reached such a verdict, does not show prejudice against Mrs. McEwen. These things indicated perhaps that he had formed an opinion regarding the legal questions which had been presented in the case and in reference to the sufficiency of plaintiff's proof. Such conviction in the mind of the judge, based upon his actual observation of the witnesses, the hearing of their testimony, and his knowledge of the law applicable to such cases does not amount to that prejudice against a litigant which the statute contemplates as a basis for change of venue. (*Western Bank of Scotland* v. *Tallman*, 15 Wis. 92, 104.)

Appellant argues that the demeanor of the judge, at the time when the verdict was returned, was inconsistent with the previous submission of the case to the jury after denying a motion for a directed verdict in favor of defendant. But such inconsistency (if inconsistency it be) does not prove prejudice. It merely indicates that upon maturer consideration of the case than the court had given at the time of the submission thereof to the jury the judge deemed it his duty, under his oath, to grant a new trial. The showing of prejudice was very slight, and in our opinion it was met so fully by the affidavit of Judge Wood that there can be no doubt

of the justness and propriety of the court's action in deny-ing the motion made by plaintiff under section 170 of the Code of Civil Procedure. The subject of alleged disqualifi-cation of a judge has recently received so full and careful consideration in the matter of the *Estate of Friedman*, 171 Cal. 431, [153 Pac. 918], that we need not review that sub-ject anew with any degree of elaboration. Judge Wood's suggestion that a motion for a new trial should be made upon the minutes of the court was no more sinister in this case than was Judge Graham's remark to Mr. Woodworth in one of the proceedings in the Friedman Estate that counsel "should not appeal" from a certain order. If Judge Wood displayed annoyance at what seemed to him the misconcep-tion by the jury of the effect or weight of the evidence, he merely showed what almost every judge of a trial court has felt at times, yet such feeling with reference to the insuffi-ciency of the case presented by one of the litigants is not the prejudice which the statute makes the basis for its removal to another court. Frequently the possession of such a feel-ing is a proof of the legal learning and the sense of justice of the presiding jurist who harbors it.

Counsel for appellant insists that specifications of insuffi-ciency of evidence numbered VII, IX, X, XI, and XII are improper because they relate to matters for proof of which the burden was upon defendant, and because the affirmative statements in the specifications as to what the evidence showed are mere conclusions. The seventh specification recites that there was no evidence proving or tending to prove that Mr. McEwen's death was not due to the concurrence of nephritis and rheumatism with the effects of his fall, if any. It then concludes as follows: "But on the contrary, the evidence proves by an overwhelming preponderance, that if the said fall suffered by the said McEwen contributed in any manner or degree to the death of said McEwen, that it served merely to accelerate the progress of the diseases from which the said McEwen was then suffering, and the last stages of which were then approaching, to wit, nephritis and rheumatism, and at most, concurred with said diseases in bringing about said death." This, we think, sufficiently directed the attention of the court and the adverse party to the particular point on which the evidence was claimed to be insufficient, and thus

measured up to the requirements of section 659 of the Code of Civil Procedure.

The ninth specification is to the effect that there is no evidence proving or tending to prove that Charles R. McEwen and plaintiff fulfilled the conditions of the policy, but that, on the contrary, he made a certain quoted warranty which was false and she refused to permit an autopsy upon his body after death. It may be that, under the pleadings, the burden was on the defendant to negative the warranties in the policy, and that it failed to do so, but this specification and the others which are attached sufficiently show defendant's theory and the evidence which it was desired to call to the court's attention. It is our opinion that, the execution and delivery of the policy being admitted, the burden was upon the defendant to show the falsity of statements of Mr. McEwen made by way of warranty, such statements having been attacked by the answer. If the defendant failed, as appellant asserts, and no such proof was made, we must assume that the court granted the motion for some other reason. There are other specifications the form of which appellant does not attack. For example, the eighth specification is in substance that there was no evidence overcoming the *prima facie* case established by the certificate of death attributing the decease of Mr. McEwen to rheumatism with nephritis as a contributory cause. We cannot see that the opposite party was injured by the alleged defects in some of the specifications, and for that reason we will not refuse to consider the case on appeal. (*American Type Founders' Co.* v. *Packer,* 130 Cal. 459, 461, [62 Pac. 744]; *In re Yoakam's Estate,* 103 Cal. 503, [37 Pac. 485]; *Abbott* v. *Jack,* 136 Cal. 510, 513, [69 Pac. 257]; *Seymour* v. *Oelrichs,* 156 Cal. 782, 789, [134 Am. St. Rep. 154, 106 Pac. 88].)

Without reviewing the testimony very extensively we may say that Mr. McEwen had been confined to the house with a serious illness for a number of days. Dr. Ferbert was in attendance. The condition of the patient was such that he required the constant nursing of his wife or his daughter. On the night of the fall his daughter had persuaded her mother to take some rest and she, the daughter, was taking care of the patient. During the night Mr. McEwen wished to go to the bathroom. He arose from a recumbent position and sat on the edge of the bed with his feet upon the floor.

He then sent his daughter to summon her mother from a room across the hall, and during the absence of the former from the apartment of the sick man he fell. When his wife and daughter arrived in his room they found Mr. McEwen with his head doubled under his shoulder in a limp manner. He was unconscious. They placed him on the bed and he became conscious in a few minutes. He complained of a pain in his neck. He grew worse and died about twenty-four hours afterward. All of these facts appear from the testimony of plaintiff's witnesses. Dr. Phillip, called by the plaintiff, testified that he examined the body of Mr. McEwen after death. He found an abrasion on the outer part of the left arm—"a scraping of the epidermis" as he described it. He also testified as follows: "And I turned the body over and saw what we call ecchymosis or discoloration of the skin over the neck and back of the left shoulder extending down the back a short distance. It was a deep purple discoloration, fading off. I didn't see any other marks or discolorations on the body. I looked over the body to see whether there were others or not. In my opinion that bruise or discoloration was caused before death because there was a faint bruise still about the scrape on the arm and the ecchymosis or discoloration was apparently fresh and localized." He further stated that it was possible for a healthy person to be struck a blow on the shoulder or neck which would not break any bones but would cause death. On cross-examination, he said that such a thing was possible but not probable. He had been asked a hypothetical question on direct examination based upon a statement of some of the circumstances in evidence, but would not venture to say what the cause of death would be in view of such circumstances. On cross-examination he said:

"From the matters stated in the hypothetical question asked me, I believe it is impossible to tell or determine the cause of death. The only possible way to determine it would be by an autopsy." Other physicians testified that the postmortem conditions did not result from a blow or fall, and that there was a swelling of the leg which might be a symptom of nephritis, or a diseased condition of the heart or liver. Unquestionably there was no autopsy. Upon this evidence the court might well have concluded that there was no sufficient showing to support the burden of proof which was upon plaintiff. Appellant attacks the ruling whereby the certifi-

cate made by Dr. Ferbert, and assigning rheumatism and nephritis as the causes of death, was admitted in evidence. It is not necessary for us to go into this matter, nor to discuss the constitutionality of the statute which makes such a certificate *prima facie* evidence of the cause of death.  There is no showing that the court depended upon the certificate of Dr. Ferbert in reaching the conclusion that the motion for a new trial should be granted.  Without the certificate, and upon the evidence furnished by plaintiff herself, there was ample scope for the exercise of that wide discretion which is committed to a trial court in granting or denying a motion for a new trial.  Unless there has been an abuse of discretion the action of that court is conclusive.  The order was in general terms and it must be affirmed if it could be sustained upon any of the assigned grounds.  (*Gordon* v. *Roberts,* 162 Cal. 506, 508, [123 Pac. 288]; *Condee* v. *Gyger,* 126 Cal. 546, 547, [59 Pac. 26]; *Empire Investment Co.* v. *Mort,* 169 Cal. 732, 736, [147 Pac. 960].)

Clearly the court was guilty of no abuse of discretion in granting the motion for a new trial.

The orders from which plaintiff appeals are affirmed.

Henshaw, J., and Lorigan, J., concurred.