[Civ. No. 19367.   First Dist., Div. Three.   May 17, 1962.]

DOROTHY  TALIAFERRO,  Plaintiff  and  Respondent,  v.
EUGENE A. TALIAFERRO, Defendant and Appellant.

Eugene A. Taliaferro, in pro. per., for Defendant and Appellant.

Frisbie & Hoogs and W. H. Hoogs for Plaintiff and Respondent.

DRAPER, P. J.—Previous appeals arising from the 1943 divorce of the parties (for citations see *Taliaferro* v. *Taliaferro,* 200 Cal.App.2d 190, 191, fn. 1 [19 Cal.Rptr. 220]) have dealt with paragraph 7 of the property settlement agreement, which provides for alimony and child support. This case turns on paragraph 5, providing for division of property. Although represented by counsel at trial, defendant appeals in propria persona. He has filed seven separate appeals to reach the issues. This opinion deals only with the appeal from the judgment.

During the marriage, defendant owned and operated Davis Auto Exchange, an "auto wrecking, repairing and new and used parts business." This business and a number of parcels of real estate, some occupied by the business and some not, were agreed to be community property. The first sub-

division of paragraph 5 provides that the business shall "remain under the management and control of the husband and he shall be entitled to all the profits from the operation thereof." It then specifies that "the value of said business and the premises upon which it is located" is $20,000, "and in the event of the sale of said business the wife shall receive the sum of . . . ($10,000.00) as and for her interest therein. . . ." Paragraph 5(2) requires husband to pay all taxes and assessments "on the real estate belonging to the parties hereto," and that he "shall receive and be entitled to all monies received for the rental of any of said real property." Paragraph 5(3) reads: "In the event of the sale of any of the real estate belonging to the parties hereto each shall receive and be entitled to one-half of the price received for said real estate."

Proper construction of this language is the core issue. Plaintiff wife contends that sale of the business alone, without the real property it occupies, entitled her to $10,000. She bases this view on the language conditioning this payment on "the sale of said business," and upon the separate provision for equal division of proceeds of sale of "any of the real estate" without limitation to that occupied by the business. Defendant contends that since the "business and the premises upon which it is located" is valued at $20,000, he clearly is to make the $10,000 payment only when the business and all the real property occupied by it is sold.

Mere statement of these contentions and of the language of the contract makes apparent the ambiguity of the writing. Accordingly, the trial court properly admitted extrinsic evidence as an aid to interpretation.

The agreement described the business merely as "located at 2610 San Pablo Avenue." The oral testimony showed that it occupied a number of lots, some owned and some not. Defendant himself testified, at different times in the trial, that the total of these lots was as high as 60 and as low as 22. His testimony as to the number of lots not owned, but occupied by the business as tenant or trespasser, varied from 10 to 22. A number of the lots occupied by the business were unimproved, and were used only for storage of scrap or of automobiles to be scrapped. From time to time some such lots were abandoned and replaced by moving the articles stored on them to other vacant lots contiguous to the remainder of the business property. The evidence also showed that at the time of the agreement, the parties owned a number of lots

never occupied by the business. Defendant testified that the parties owned a total of 100 to 110 lots. Plaintiff testified that 250 to 300 lots were owned. Defendant valued a number of these lots at as little as $100 each.

From this testimony, it is apparent that to require the $10,000 to be paid only when literally all "the premises upon which it (the business) is located" were sold would defeat any payment to wife, since much of that land was not owned by the parties. Even if the payment to plaintiff be deemed conditioned on sale only of the occupied lots owned by the parties, the result is unreasonable. Defendant could sell the business and land occupied by it, retaining but one unimproved $100 lot, and retain all the proceeds of these sales. It is apparent that this is not the result intended by the parties when they executed their agreement. Rather, there is substantial evidence to support the trial court's conclusion that they meant the $10,000 payment to be made to wife when husband sold the business, and that she was to receive half the proceeds of each sale of real estate, as made. We are unimpressed by defendant's argument that this construction is unjustified because it would give wife more than half the property. There is no reason to believe that the parties intended a precisely equal division of their property. Moreover, the husband's retention of rentals and of business income until he chose to sell could well give him more than half the total ultimately divided.

Defendant next contends that the evidence is insufficient to support the finding that he in fact did sell Davis Auto Exchange. In 1953, an auctioneer, with defendant's authority, advertised a sale on the exchange premises of "the entire stock of new auto parts" of Davis Auto Exchange. A second such auction was held a few weeks later. Shortly before these auctions, defendant transferred a substantial stock of new parts to another business in which he owned an interest. As to the used parts, the testimony is less direct. Defendant's records were inadequate to show what, if any, stock of used parts remained after the auctions of new parts. However, disposition of used parts, as well as new, is inferable from the fact that sales of parts greatly decreased, and had substantially ended by 1954. There is evidence that defendant told a third party in January 1954 that he was going out of the business and told another that he had done so. Reports filed by defendant showed no employees in this business in 1954 and 1955, whereas 10 to 20 had been employed previously. Although

there is no evidence of a sale of the business as a going concern, there is substantial evidence to warrant the trial court's determination that defendant had in fact disposed of the assets and gone out of the business. Thus the finding that it had been sold, within the meaning of the property settlement agreement, is supported.

Finally, defendant argues that the judgment must be reversed because the trial judge was disqualified. Defendant's affidavit asserting bias and prejudice on the part of the trial judge was filed October 25, 1955. It was stricken by the judge on his own motion at the opening of trial October 31, 1955.

In considering this affidavit, it must be recalled that the peremptory challenge of a judge authorized by the 1937 statute (Code Civ. Proc., § 170.5; Stats. 1937, ch. 507, p. 1496) is unconstitutional (*Austin* v. *Lambert,* 11 Cal.2d 73 [77 P.2d 849, 115 A.L.R. 849]). The statute providing for disqualification of a judge upon the filing of an affidavit in specified form (Code Civ. Proc., § 170.6) was not adopted until 1957 (Stats. 1957, ch. 1055, p. 2288).

Thus defendant's attempt to disqualify the judge for this 1955 trial must turn upon the statute governing disqualification for cause (Code Civ. Proc., § 170), and the efficacy of the attempted disqualification must be judged by its terms. That statute requires a verified statement "setting forth the fact or facts constituting the ground of the disqualification of such judge." Here the sole ground asserted is the claimed actual bias or prejudice of the judge (Code Civ. Proc., § 170, subd. 5). If defendant's affidavit alleged sufficient facts to show bias or prejudice, the judge would have been required either to withdraw from the case or to file an answer and have the issue tried by another judge (1 Witkin, Cal. Procedure, § 50(a), p. 175). To have this effect, however, the affidavit must state facts. If it sets out mere conclusions, the judge sought to be disqualified may himself order it stricken from the files (*Ephraim* v. *Superior Court,* 42 Cal. App.2d 578 [109 P.2d 378]).

Defendant's affidavit occupies more than 8 pages of the clerk's transcript. It bristles with assertions that the judge is biased and prejudiced. To those accustomed to the operation of the 1957 statute (Code Civ. Proc., § 170.6) this at first glance seems sufficient. But since the attempted disqualification is for cause (Code Civ. Proc., § 170) we must look to the facts alleged.

They are few. They deal largely with acts of the same judge in trial of a wholly distinct action two months before this affidavit was filed. It is alleged that the judge denied a continuance requested by defendant at the opening of the earlier trial. There is no allegation as to the showing made upon the motion for continuance in this other action, and its denial does not show prejudice (see *People* v. *Darby*, 114 Cal. App.2d 412, 439 [250 P.2d 743]).

It is alleged that in the earlier trial, the judge, after reviewing some of the court files, "branded affiant as a litigious person." There is no suggestion that the adjective was inaccurate. Nor is there any attempt to show how this feeling on the part of the judge could prejudice him against affiant in the instant action, which was not initiated by him, but in which he was the defendant.

It is alleged that in the previous trial, the judge made "pointed remarks" about one of defendant's witnesses. Whatever the unquoted remarks may have been, there is no suggestion that the same witness would be called in this case, and in fact he was not. It is alleged that in the August trial and one other this judge "made several references to contempt, indicating that he was going to hold affiant in contempt of court." There is no claim that defendant was held in contempt and, more important, no showing that the remarks were not fully justified.

The affidavit does allege that the judge, during the August trial, told defendant that he "thought of having affiant reported to the District Attorney for perjury," and stated that "he intended to examine the entire record of the case with a view to referring the matter to the District Attorney for prosecution for perjury." ■■■ A judge is disqualified if he has stated that a party has wilfully sworn falsely and that the judge would have no confidence in his testimony (*Keating* v. *Superior Court*, 45 Cal.2d 440 [289 P.2d 209]; or that defendant had deliberately perjured himself (*Chastain* v. *Superior Court*, 14 Cal.App.2d 97 [57 P.2d 982]) or had wilfully misstated the facts (*Evans* v. *Superior Court*, 107 Cal.App. 372 [290 P. 662]) or knowingly made false statements in an affidavit (*Briggs* v. *Superior Court*, 215 Cal. 336 [10 P.2d 1003]). ■■■ Our case differs from those cited in that the affidavit here states only that the judge "thought of" referring the matter to the district attorney, or "intended to examine the record with a view to" such reference.

Aside from this distinction, however, the claim of dis-

qualification is wholly dispelled by defendant's affidavit itself. It alleges that after the above events the judge "told affiant in chambers that he had regretted his anger in open court and had decided not to refer the matter to the District Attorney for perjury." Statements made by the judge in the August trial are relevant only as they show bias or prejudice against defendant at time of the present trial two months later. In view of the judge's expression of regret and his determination not even to suggest investigation, there is no showing of prejudice at the time he entered upon the present trial.

The rule is clear that "expressions of opinion uttered by a judge, in what he conceives to be a discharge of his official duties, are not evidence of bias or prejudice" (*Kreling* v. *Superior Court,* 25 Cal.2d 305, 310-311 [153 P.2d 734]; see also *Fishbaugh* v. *Fishbaugh,* 15 Cal.2d 445, 456 [101 P.2d 1084]; *McEwen* v. *Occidental Life Ins. Co.,* 172 Cal. 6, 11 [155 P. 86]).

Viewed in its entirety, the affidavit here filed amounts to no more than that held to be insufficient in *Mackie* v. *Dyer,* 154 Cal.App.2d 395 [316 P.2d 366] (that affidavit is quoted in full in fn. 1, at pp. 397-398). We hold that defendant's affidavit was insufficient to raise any issue of fact as to the alleged bias or prejudice of the trial judge. Thus the affidavit was properly stricken, the judge was not disqualified and no reversible error appears.

We have, however, reviewed the record in detail to determine whether the judge in any way justified the fears expressed in defendant's pretrial affidavit. We find no indication of any bias or prejudice. On the contrary, the trial was conducted with scrupulous fairness.

Defendant raises a total of 20 "questions" on this appeal. We have reviewed carefully the 17 issues not heretofore treated. We find no merit in any of them, and decline to impose further upon the captive audience which must purchase these reports by either listing or discussing those captious contentions.

Judgment affirmed.

Salsman, J., and Devine, J., concurred.

A petition for a rehearing was denied June 8, 1962, and appellant's petition for a hearing by the Supreme Court was denied July 11, 1962.