[Crim. No. 7557. Second Dist., Div. Two. Oct. 24, 1962.]

THE PEOPLE, Plaintiff and Respondent, v. ARTHUR DUANE THOMPSON, Defendant and Appellant.

Paul Augustine, Jr., under appointment by the District Court of Appeal, and Morris Lavine for Defendant and Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Jack K. Weber, Deputy Attorney General, for Plaintiff and Respondent.

HERNDON, J.—This appeal is taken from judgments entered after a jury trial and upon a verdict which convicted defendant and appellant of: (1) assaults against two different victims with intent to commit rape; (2) robbery of one of said victims, and (3) an attempt to violate section 288a of the Penal Code committed against the other. Following his conviction, defendant was adjudged to be a sexual psychopath under the provisions of chapter 4 of part 1 of division VI of the Welfare and Institutions Code and was committed to the state hospital for the required 90-day period of observation and diagnosis.

After completion of the observation period the superintendent of the state hospital made a return to the court wherein it was declared that defendant was a sexual psychopath and a menace to the health and safety of others, but that he would not benefit from treatment in a state hospital. The trial court so found and denied defendant's motions for a new trial, made both before and after his commitment to the hospital. He was thereafter sentenced to state prison. In his opening brief, filed *in propria persona*, appellant has listed a number of clearly untenable assignments of error. Counsel appointed by this court very properly has abandoned a number of them.[1]

We have concluded that the evidence supporting the verdict and the judgment is abundantly sufficient to establish every element of the crimes charged, and that it is not "inherently improbable" in any particular. We regard it as unnecessary to spread upon these pages any lengthy recital of the testimony which relates an unusually sordid and repulsive story of sexual perversion and brutality.

Appellant contends that "there was no adequate waiver of trial by jury as required by law." We shall relate briefly the proceedings which constitute the basis for this contention. Upon the reconvening of the court on the second day of trial, the judge called appellant and his counsel and counsel for the People into his chambers out of the presence

---

[1]We have reviewed all of appellant's contentions and, as aptly stated in *Taliaferro* v. *Taliaferro*, 203 Cal.App.2d 642, 648 [21 Cal.Rptr. 864]: "We find no merit in any of them, and decline to impose further upon the captive audience which must purchase these reports by either listing or discussing those captious contentions."

of the jury. The bailiff, the reporter and the clerk of the court also were present. The following exchange then occurred:

"*The Court*: . . . The bailiff last night gave some information to the Court which I would now like to have you repeat for the benefit of those present. *The Bailiff*: Juror No. 6, Donna Prior, said that she recognized the defendant from the time she was out at the college and said she was in the restroom and this gentleman looked underneath the partition. *The Court*: By 'this gentleman,' you mean the defendant? *The Bailiff*: The defendant, and she said it was the defendant and she told him to get out and that's all that occurred, but she said it was this gentleman. *The Court*: She further stated, did she not, that she didn't place the defendant during the voir dire examination and, in fact, only after the testimony of the witnesses yesterday were the facts that she related called to her attention? *The Bailiff*: That is correct. *The Court*: She felt very badly about the matter as she stated that to you, did she not? *The Bailiff*: Yes, sir.

"*Mr. Kirschke*: She is to be commended for her candor, I think, in bringing it up. *The Bailiff*: She was very upset. *The Court*: Yes, indeed. I called you in so you might have that information and to ascertain what your desire is. *Mr. Ellertson*: Well, of course, I think she should be excused. The question would then arise, would you want to go ahead with 11 jurors? *Mr. Kirschke*: Well, this is an unusual situation. It's like a challenge for cause, in effect. *The Court*: Yes. Under the circumstances, I do feel that—— *Mr. Kirschke*: Well, the intelligent thing to me, it would seem, would be to stipulate that she might be excused and proceed with 11 jurors because obviously she would have some bias or prejudice against Mr. Thompson. *Mr. Ellertson*: That is agreeable with me and that would be my recommendation to you. *Mr. Thompson*: Whatever Mr. Ellertson says. *Mr. Ellertson*: You want to go ahead with 11 jurors? *Mr. Kirschke*: Does that make sense to you, to stipulate she may be excused and then proceed with 11 jurors instead of 12? *Mr. Thompson*: Yes. I don't see any difference. *Mr. Kirschke*: Obviously she would be prejudiced against you. *Mr. Thompson*: Yes. *The Court*: I'm perfectly willing, under the circumstances, to excuse her for cause with the stipulation and with you, particularly, Mr. Thompson, so stipulating, that she may be excused for cause and to proceed with the trial with the 11 remaining jurors. That is your wish? *Mr. Thompson*: Yes. . . . *The*

*Court*: Will it be stipulated that out of the presence of the other jurors I may excuse her in here so she will not need to take the box and then be excused? *Mr. Kirschke*: So stipulated. *Mr. Ellertson*: So stipulated. *The Court*: That is agreeable to you, Mr. Thompson? *Mr. Thompson*: Yes, sir.''

Thereafter, the following proceedings were had in the presence of the jury: ''*The Court*: Good morning, ladies and gentlemen. It's now almost 11:00 o'clock. The Court is extremely sorry for the delay in calling you in this morning. The Court had 23 matters on the 9:00 o'clock calendar and the Court has been continuously involved in those matters. Incidentally, one of your number, Mrs. Donna L. Prior, has been excused by the Court from further attendance in this trial. It's largely a personal matter. It certainly is no fault or criticism of her in any way, shape or form. The Court will explain to you later in more detail the reason for her being excused, but the Court assures you that the Court has nothing but praise for Mrs. Prior. It has been stipulated by counsel that she might be excused.'' No further comment was made on the matter during the course of the trial.

Article I, section 7, of the California Constitution provides in part: ''. . . A trial by jury may be waived in all criminal cases, by the consent of both parties, expressed in open court by the defendant and his counsel, . . .'' Manifestly, the proceedings had herein were appropriate under the circumstances. (*People* v. *Rodriguez,* 175 Cal.App.2d 56, 60 [345 P.2d 330].) We find no merit in appellant's contention that his waiver was not expressed in ''open court'' merely because the jury was not present. Even if it were plausible to argue that generally a jury may be waived only in the presence of the jury, both appellant and his counsel here expressly agreed that the juror should be excused in chambers so that she would ''not need to take the box and then be excused.'' Obviously no possible prejudice could have resulted from this procedure; indeed, it clearly was the most suitable method by which to minimize the effect of the incident.

It should be noted also that prior to the commencement of the trial, the court expressly asked counsel whether or not they felt it necessary to select alternate jurors. Both counsel indicated that they did not believe it necessary. Where there are no alternate jurors a trial may be had before a lesser number than 12 upon stipulation of the parties. (Cf. *People* v. *Ragsdale,* 177 Cal.App.2d 676, 678 [2 Cal.Rptr. 640]; *Peo-*

ple v. *Patterson,* 169 Cal.App.2d 179, 186, 187 [337 P:2d 163] ; *People* v. *Clark,* 24 Cal.App.2d 302, 304-306 [74 P.2d 1070].)

Appellant further argues that he was prejudiced because the juror might have related her experience to the other jurors prior to being excused. However, neither appellant nor his counsel objected to the proceedings in the trial court on this ground, nor did they make any request that the juror be examined in this regard. Clearly, appellant cannot raise for the first time on appeal an alleged error that he did not afford the trial court an opportunity to correct. He may not silently proceed in the hope of an acquittal and then, failing to achieve such a result, demand a second chance. (*People* v. *Spinks,* 190 Cal.App.2d 366, 368 [11 Cal.Rptr. 923].)

The record does not contain so much as a hint of evidence to support appellant's speculations regarding any possible irregularity in the excused juror's conduct. It affirmatively reveals that when a recess was taken immediately after the jury was impaneled, the court stated to them: "You are admonished that you are not to discuss this case among yourselves, nor with any other person; nor are you to form or express an opinion thereon until the case is finally submitted to you for decision." A similar admonition was given the jury at every recess and adjournment during the trial. The juror involved in the instant case appears to have been most conscientious in her duties and there is nothing to dispel the general rule that "[i]t will be presumed that the jurors were true to their oaths and followed the various admonitions and instructions of the court." (*People* v. *Isby,* 30 Cal.2d 879, 896 [186 P.2d 405].)

Appellant assigns as error the admission of testimony relating to other crimes committed by him, i.e., instances of assaults by appellant upon other victims, other rapes and other attempts to force violations of section 288a involving other victims. Appellant's own arguments concerning the issues of intent and identity sufficiently answer his contentions made in this assignment. As the court stated in *People* v. *Nye,* 38 Cal.2d 34, 37 [237 P.2d 1], "The evidence of the attempt to rape Miss W. was clearly admissible to show that defendant's acts against Mrs. P. were committed with the intent to commit rape." (See also *People* v. *Combes,* 56 Cal.2d 135, 146-148 [14 Cal.Rptr. 4, 363 P.2d 4] ; *People* v. *Peete,* 28 Cal.2d 306, 319 [169 P.2d 924], dealing with the issue of identity and *People* v. *Sylvia,* 54 Cal.2d 115, 119, 120 [4 Cal.Rptr.

509, 351 P.2d 781], involving related sex offenses tending to show lewd disposition or intent.)

 Appellant asserts that prejudicial error was committed during the course of his cross-examination in that he was questioned concerning an irrelevant matter. The examination in question was with reference to a similar offense committed by appellant in Beverly Hills on or about August 30, 1960. On his direct examination, appellant denied any knowledge of the incident. On cross-examination, he was asked whether or not he had been in Beverly Hills on August 30, 1960. He replied that he had not. He was then asked whether he had been in Beverly Hills at any time during August of that year. Again he replied in the negative. By way of impeachment, he was shown a parking ticket issued to his car in Beverly Hills on August 16, 1960, and returnable on August 30, 1960. Appellant first denied that he had received the ticket. However, following the noon recess, he admitted that the ticket was his and said that he had been confused as to the dates. Clearly, the question whether or not he was in Beverly Hills on the date in issue was relevant, and, in view of his denial that he was there at any time during the month, the impeaching questions were proper. (*People* v. *Pike,* 58 Cal.2d 70, 89-92 [22 Cal.Rptr. 664, 372 P.2d 656].)

 Appellant's final assignment of error relates to the failure of the trial court upon its own motion to give a cautionary instruction. Instructions of this type are appropriate in all cases involving sexual crimes, but the circumstances of each case determine whether failure to give such instruction was prejudicial. (*People* v. *Nye, supra,* 38 Cal.2d 34, 40.)

 In the instant case, the prosecuting witnesses were adults, there was an abundance of corroboration, and there was no danger of "spite, blackmail, vindictiveness, private vengeance, neurotic fabrication or fanciful imagination" being present in all seven victims. We find the following concluding language from *People* v. *Nye, supra,* equally appropriate here (p. 41) :

· "To acquit defendant, the jury would have had to reject the testimony of the women in its entirety, or reject their identifications of defendant . . ., or decide that defendant had not intended to have sexual intercourse with them by force. A careful examination of the entire record in accord with article VI, section 4½, of the California Constitution, leads us to the conclusion that it is improbable that the jury would have rejected the testimony of the prosecuting witnesses had a

cautionary instruction been given and that there has therefore been no miscarriage of justice requiring reversal of the judgment.'' (See also *People* v. *House,* 157 Cal.App.2d 151, 157 [320 P.2d 542].)

Affirmed.

Fox, P. J., and Ashburn, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied December 19, 1962.